| .MARION F. EDWARDS, Judge.
Kelly Marie Woodrum Figueroa and Alfredo Figueroa III, parents of M.K.M.F, resided in Georgia with their children A.F. and M.K.F. On March 11, 2002, they filed a Petition for Voluntary Transfer of Custody of M.K.M.F. to Mrs. Figueroa’s half-brother, Kenneth Woodrum and his wife, Kimberly Woodrum, who resided in Jefferson Parish. In the judgment resulting from that petition, the Juvenile Court for the Parish of Jefferson granted guardianship of M.K.M.F. to the Woodrums for two years, beginning April 27, 2002, “unless ordered otherwise by this Court prior to the expiration of the at time period on April 27, 2004.” The judgment imposed the condition that the Figueroas be allowed to visit with the child when the Woodrums travel to Georgia.
On May 1, 2003, the Woodrums filed a Petition for Intrafamily Adoption of M.K.M.F. On May 12, 2003, Mrs. Figueroa contacted the court requesting revocation of the Voluntary Transfer of Custody. The two matters were consolidated for trial. Following a hearing, the Juvenile Court denied the Petition lafor Intrafamily Adoption, and further ordered that the Voluntary Transfer of Custody be dismissed, and that M.K.M.F. be returned to her parents. It is from this judgment that the Woodrums appeal.
Shortly after the judgment was rendered, the Woodrums filed an application and Motion for Stay in this Court.[1] The writ/motion urged that the Juvenile Court committed error in failing to find that they proved the parents failed to communicate with the child for a period of six months, and further, in finding that if the parents revoked their consent to the voluntary transfer, the child should be returned to them without a finding by the Court of the *905 best interests of the child pursuant to La. Ch. C. art. 1523. This court granted the stay and ordered a transcript of the Juvenile Court proceedings. We held:
We have carefully reviewed the transcript which was received by this Court on September 17, 2003, the reasons for judgment provided by the trial court and the applicable law and jurisprudence. Under the circumstances presented in this case, we are unable to conclude that the trial court abused her discretion in ordering that the custody of minor child, MKMF, be transferred to her biological parents pursuant to the specific directives of the trial court. Accordingly, relators’ writ application is denied and the stay order entered by this Court on August 26, 2003 is hereby lifted.
The Figueroas argue in brief that M.K.M.F. was returned to them in Georgia in September, 2003.
The threshold issue is the “law of the case” principle. The law of the case principle is a discretionary guide which relates to, for our purposes, the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case.
It applies to all prior rulings or decisions of an appellate court or the supreme court in the same case, not merely those arising from the full appeal process. The reasons for the law of the case doctrine is to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue.[2]
14An appellate court’s denial of supervisory writs does not bar reconsideration of an issue on appeal, nor does it prevent the appellate panel from reaching a different conclusion on the issue. Reconsideration is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results.[3]
In our prior ruling, we considered the substantive issues presented by the application, following trial on the merits. No further events took place in the trial court prior to the filing of this appeal. In this regard, we note that some cases have held a writ denial which considered the substantive issue raised on appeal is given effect as the law of the case. The Fourth Circuit considered a situation in which the same issue was brought on appeal as had been previously considered, in the same case, by the same parties, in an application for supervisory writs. The application was denied, and the court determined that its prior ruling should be regarded as the law of the case:
Of course, if we merely deny a writ application, without considering the substance of the issue raised, simply because we do not believe that the situation is appropriate for our exercise of our supervisory jurisdiction, then there is no “decision” as to that issue to be given effect as the law of the case. However, in the present case, we did decide the issue presented by the prior writ application and exactly the same issue is presented by the present appeal ....
*906 If the court of appeal merely declines to exercise its supervisory jurisdiction, because it feels that the situation is not appropriate for such exercise (e.g. the issue is better raised for the first time by appeal from a final judgment), and does not decide the substance of the issue raised by the writ application then there is no “decision” as to that issue to be given effect as the law of the case. If the court of appeal does decide the substance of an issue raised by an application for supervisory writs, then that decision will be given effect later as the law of the case just as if that decision had been rendered upon an appeal.[4]
|fiSimilarly, other courts, including our own, have determined that in the absence of palpable error or manifest injustice, it would not reconsider issues previously raised on writs which were denied.[5]
In the present case, we find that the writ panel of this court clearly considered the substance of the issues raised on this appeal, and we see neither palpable error nor manifest injustice in our prior ruling. While we find that our former ruling denying writs pertaining to return of custody to the Figueroas is conclusive, we elaborate on the reasons why writs were denied in the first instance.
The trial court gave sixteen pages of extensive and detailed Reasons for Judgment. These reasons analyzed each of the elements of La. C.Ch. art. 1523 and found that it would be in the best interests of M.K.M.F. to grant the revocation of the voluntary transfer of custody. Art. 1523 states:
A. Upon failure of a custodian to return a child after revocation of the parent’s consent, the parent may move for dismissal of the proceedings and for the return of the child to their custody.
B. The motion to dismiss shall be set for contradictory hearing with the custodians.
C.In making its determination of the best interests of the child, the court shall consider the following:
(1) The length of the parent/child separation.
(2) The current fitness of the parent.
(3) The frequency of contact between the parent and child during the separation.
(4) The efforts made by the parent to exercise parental responsibilities during the separation, including support.
(5) The terms and conditions of the judgment.
It was found that although the Figuer-oas are not perfect parents, it would be in the best interests of the child that she be returned to their custody. In so doing, the court specifically questioned the credibility of the Woodrums and did not give much weight to their testimony. The determination of credibility is based upon the | fiobservation of the witnesses’ demeanor at trial, and is firmly established as being singularly within the factfinder’s province. The court correctly noted that in determining whether it would be in the child’s best interest to be returned to her parents, *907 there was no requirement to take the fitness of the custodians into consideration. It was not a contest as to who could give M.K.M.F. the better life.
It was found that considering M.KM.F.’s age, the separation from her parents had not been too long so as to necessitate her remaining in the custody of the Woodrums. In determining the requirement of “current fitness of the parent” under the article, the court considered the definition of “parental fitness” as found in La. Ch. C. art. 1103(5) and analyzed the facts before it. There were no allegations of abuse. Although the Figueroas had difficulties with their finances and housing, the court found that their situation had stabilized. There were no allegations of illness, disability, conduct disorder, substance abuse, or chemical dependency which would make the parents unable to provide an adequate home. In the court’s opinion, the type of criminal convictions, which both the Figueroas had incurred years before the birth of M.K.M.F., did not pose a risk of any harm to her.
Analyzing the testimony, the court found that the frequency of contact between the Figueroas and M.K.M.F. was dictated and controlled by the Woodrums. The visits were limited due to the great distance between the parties, the active probation status of the parents, who could not leave Georgia until they caught up on restitution payments, and the denial of visits by the custodians. Even in Georgia, the court believed that the Woodrums controlled the visits. The efforts made by the parents to exercise parental responsibilities during the separation “were not easily accomplished by Mr. And Mrs. Figueroa considering the circumstance surrounding the placement ...” The court found that the parties had an understanding that the Fi-gueroas would not send support during the period of 17guardianship. Although it was determined that the Figueroas could have called to check on their daughter more often, their financial instability compounded their problems causing them to have limited access to long distance phone service. It was obvious to the court that the Woodrums had full intentions of completely destroying the relationship between M.K.M.F. and the Figueroas. Taking all factors into consideration, the court “unequivocally determined that it is without a doubt in [M.K.M.F.’s] best interest that she return to the custody of her parents ...” Finally, the court noted that the Voluntary Transfer would have automatically expired on its own terms on April 27, 2004, at which point custody would have reverted back to the parents unless parental rights were terminated in the adoption proceeding.
On the adoption petition, the court found that the Woodrums failed to prove the consent of the Figueroas was not needed. Under La. Ch. C. art. 1245, when an intra-family adoption is filed, parental consent is not necessary when:
B. When a petitioner authorized by Article 1243 has been granted custody of the child by a court of competent jurisdiction and any one of the following conditions exists:
(1) The parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.
(2) The parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.
The only applicable portion of the statute is (B)(2). The court found that the Woodrum’s claim, that M.KM.F.’s parents failed to see her for two separate periods of six months each, was not true. The Figueroas claimed to have visited with M.K.M.F. in Georgia in August 2002, and *908 both wrote and telephoned the child, interrupting the first six month period in dispute. The second six month period was interrupted by a request to see the child at Christmas and at Easter, which visits were denied by the Woodrums. Therefore, the petition for adoption was denied.
|sThe court applied the law properly to the facts of the present case. The record, including the transcript made a part of the writ application, amply supports each finding made by the court. Finding no palpable error nor manifest injustice in our prior decision, the judgment of the trial court is affirmed. Costs of this appeal are taxed to the Woodrums.
AFFIRMED.
CHEHARDY, J., dissents without reasons.

. In Re: Adoption of MKMF, 03-C-1000, 9/24/03.

. Shaffer v. Stewart Const. Co., Inc., 03-971 (La.App. 5 Cir. 1/13/04), 865 So.2d 213, citing Jones v. McDonald’s Corp., 97-2287 (La.App. 1 Cir. 11/6/98), 723 So.2d 492, 494 (some citations omitted).

. State v. Davis, 03-488 La.App. (5 Cir. 11/12/03), 861 So.2d 638.

. Tsatsoulis v. City of New Orleans, 99-2544 (La.App. 4 Cir. 8/30/00), 769 So.2d 137, writ not considered, 01-684 (La.5/4/01), 791 So.2d 647; see also

. Franklin Southland Printing Co., Inc. v. New Orleans Aviation Bd., 99-60 (La.App. 5 Cir. 7/27/99), 739 So.2d 977; Ficarra v. Mount Vernon Fire Ins. Co., 527 So.2d 493, 494 (La.App. 5 Cir.1988). Also see Green v. K-Mart Corp., 2001-675 (La.App. 3 Cir. 6/18/03), 849 So.2d 814 (La.App. 3 Cir.2003); Bowie v. Young, 2001-0715 (La.App. 3 Cir. 3/20/02), 813 So.2d 562. But see Bonar v. Bonar, 00-232 (La.App. 5 Cir. 8/29/00), 768 So.2d 194.