926 So.2d 72 (2006)
STATE of Louisiana
v.
Danny R. JACKSON.
No. 05-KA-923.
Court of Appeal of Louisiana, Fifth Circuit.
March 28, 2006.
Rehearing Denied May 3, 2006.
Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, State of Louisiana, Terry M. Boudreaux, Anne Wallis, Assistant District Attorneys, Appellate Counsel, Donald A. Rowan, Assistant District Attorney, Trial Counsel, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee, State of Louisiana.
*74 Jane L. Beebe, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant, Danny R. Jackson.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY, and FREDERICKA HOMBERG WICKER.
*73 SUSAN M. CHEHARDY, Judge.
Defendant, Danny R. Jackson, appeals his convictions and sentences on drug charges. For reasons that follow, we affirm.
Defendant was charged by bill of information with one count of possession with intent to distribute marijuana, in violation of La. R.S. 40:966 A, one count of possession with intent to distribute cocaine in violation of La. R.S. 40:667 A, and one count of being a convicted felon in possession of firearms in violation of La. R.S 14:34. Defendant entered a plea of not guilty at arraignment, and in due course was tried by a jury. Count three, relating to the possession of firearms was dismissed and defendant went to trial on the two remaining drug charges. At the conclusion of the trial, defendant was found guilty as charged as to both drug charges. He was sentenced to serve 20 years at hard labor on each count to run concurrently. On the same day, the State filed a multiple offender bill of information alleging that defendant is a second felony offender. Defendant denied the allegations of the multiple offender bill of information. He filed a timely motion for appeal which was granted, and a motion to reconsider sentence, which was denied as untimely.

FACTS
The record shows that the investigation of the crimes which form the basis for the charges began with Chad Bridges, an informant. Bridges testified at trial that he informed police officers that he had bought cocaine in the past from defendant and co-defendant, McFarland (a female), at their residence on Park Manor Drive in Metairie. Bridges further testified that those officers arranged a drug buy with him. Officers gave Bridges money and told him to purchase cocaine from defendant again. Bridges explained that he subsequently called defendant, went over to his residence, and purchased cocaine from him for approximately $60.00.
Bridges further testified that he only bought cocaine from defendant that one time, but that he had purchased it at other times in the past from both defendant and McFarland simultaneously and one time from McFarland alone. He never saw defendant smoke marijuana, nor did he ever smell marijuana smoke or see any paraphernalia that would be used to smoke marijuana in defendant's residence. He admitted to having a drug addiction and a conviction for possession of diazepam in 1996.
Sergeant Robert Gerdes of the Jefferson Parish Sheriff's Office (JPSO) testified that he prepared and executed a search warrant at 6500 Park Manor Drive. During that search, Sgt. Gerdes recovered approximately 600 grams of marijuana from inside a FUBU jacket inside the closet in the master bedroom, and some miscellaneous paperwork addressed to defendant and co-defendant at 6500 Park Manor Drive. Sgt. Gerdes also took photographs of evidence found inside the residence including the marijuana located inside the FUBU jacket, size triple extra large, other packages of marijuana, a package of purple bags which the sergeant explained were often used to package drugs, invoices, four firearms, a large amount of ammunition, a cell phone, a safe, contents of the safe that included packaging material, marijuana, and cocaine, currency, and two digital scales.
*75 In the course of that search, Sgt. Gerdes advised defendant of his rights. Afterwards, defendant told the sergeant that there were only three ounces of marijuana inside the residence for his personal use. Defendant also admitted to Sgt. Gerdes he knew the weapons were inside the residence, but that he was holding them for someone else. When Sgt. Gerdes asked defendant who owned those weapons, defendant refused to answer. Sgt. Gerdes testified that, although he and the other officers searched defendant's residence thoroughly, they could not find any drug paraphernalia such as rolling papers, pipes, or bongs, or any evidence to suggest that marijuana had been smoked in that residence. Sgt. Gerdes further testified that, when defendant was arrested, he had no drug paraphernalia on his person.
JPSO Detective Danny Jewel, who was also involved in the search, testified that he recovered a .380 pistol from a basket at the bottom of a bedside table next to the bed. He believed that the gun was fully loaded with eight rounds. He also recovered a fully loaded Taurus .22 pistol from defendant's residence. He indicated that the FUBU jacket obviously belonged to defendant, because of its extra large size. Co-defendant, McFarland, was only about four feet tall. Two other firearms were also recovered from defendant's residence.
Charles Krone, a JPSO forensic scientist who was qualified as an expert in the field of drug identification, testified that he examined a small Ziploc bag removed from defendant's residence and found cocaine. He further testified that he examined one Ziploc bag containing vegetative material, with a net weight of 79.85 grams, and another containing the same material, with a net weight of 642.98 grams. Both material tested positive for marijuana.
JPSO Lieutenant Bruce Harrison, who was qualified as an expert in the field of the use, packaging, distribution, and value of narcotics, testified that there were three factors the police looked at in narcotics cases to determine whether a person should be charged with simple possession or possession with intent to distribute: (1) the quantity of the drugs (in simple possession cases, he would expect the quantity to be very small); (2) the manner in which the drugs are packaged, i.e., for personal consumption or retail sale; and (3) the value. Lt. Harrison explained that, in simple possession cases, he also looked for user paraphernalia because, if that person was a user, he would have drug paraphernalia on his person, in his residence, and/or in his vehicle. The lieutenant explained that people who used marijuana had the smell of smoke in their clothes, drapes, and/or mattresses. He further testified that if he did not see any user paraphernalia and there was no marijuana odor, he would conclude that that person did not use marijuana.
Lt. Harrison explained that in possession with intent to distribute cases, he also looked for additional packaging material; communications devices (used by drug dealers so they could communicate with their customers), a log book (used by drug dealers to record how much they took in and who owed them money), scales (used by drug dealers to weigh drugs), some type of assets such as currency, electronics equipment, nice homes and cars, and weapons (used by drug dealers to protect themselves from thieves and the police).
Lt. Harrison testified that, in this case, the street value of the approximately one-and-a-half pounds of marijuana recovered was approximately $1,100.00 to $1,400.00. It was his opinion that that value was not consistent with personal use. After considering the State's evidence, Lt. Harrison opined that this was a possession with intent to distribute case.
*76 After the State rested, defendant testified that he used marijuana every day, all day, except when he was working. He explained that, on the days he was working, he would smoke marijuana before work, during his break, and after work, and that he kept the marijuana in his car. Defendant asserted that, at home, he would use different pipes he owned to smoke the marijuana, one of which was glass that looked like a vase that he kept stored in a shoebox, and another one that was wooden and needed assembling. He also asserted that he had another pipe that he kept on his key chain. He testified that he bought the marijuana that was found in his house for $500.00, that the marijuana was for his personal use, that it would take him approximately a month-and-a-half to smoke it, and that he bought a larger quantity because it was less expensive. Defendant denied selling drugs to anyone, and stated that he never had any intention to distribute the drugs.
Defendant further provided explanations regarding the evidence recovered from his house. He explained that he used the small plastic baggies to store jewelry and marijuana in, that he intended to use the large scale for a mail order service business but decided against it, and that the cell phone and the firearms (except for the old collectible German gun) belonged to McFarland. Defendant testified that he was an assistant mechanic at Tire Kingdom, that he worked fifty hours per week, and that he made $7.75 an hour plus commission. He pointed out that he owned a 1991 Caprice Classic worth approximately $1,300.00, and that he did not own a house. Defendant testified that he pled guilty to aggravated battery in 1996.
Defendant asserted that Bridges was lying when he said that he bought cocaine from him, and that he did not know why Bridges did so. He remembered Bridges and his girlfriend, Kelly (who was McFarland's friend), coming by the apartment one time, but he did not remember seeing Bridges on his own without McFarland being there. Defendant denied telling the police officers that he only had three ounces of marijuana in the apartment and that he was holding guns for someone else.

LAW
In brief to this court, defendant assigns two errors. In the first, he argues that the trial court erred in denying his motion in limine and allowing evidence of other criminal activity into evidence at trial. Defendant claims that the other crimes evidence was prejudicial, lacked sufficient probative value, and only served to depict him as a bad person. He specifically contends that the trial court erred by allowing Chad Bridges, the informant, to testify that he purchased drugs from defendant on prior occasions. Defendant argues that the informant's trial testimony was contrary to the testimony of Officer Daniel Jewel at the motion hearing in that the informant told the officer that defendant was not at home and that he bought drugs from the co-defendant. Defendant notes that the State failed to provide him with written or reasonable notice of the other crimes evidence, and that no Prieur[1] hearing was held outside the presence of the jury. He concludes by stating that the error in admitting this other crimes evidence was not harmless.
The State responds that the trial court did not err in allowing the introduction of other crimes evidence, as this evidence was relevant to prove an element of the offense, namely, defendant's intent to distribute drugs. As such, the evidence was relevant for a purpose other than to show *77 that defendant committed the charged offense, or that he was simply a bad person. The State notes that defendant did not complain of untimely notice in the court below and, therefore, he has waived any argument with respect to that issue. Moreover, the State notes that a pre-trial Prieur hearing was held and that defendant was aware of the informant and evidence of the previous drug sales prior to trial. Alternatively, the State contends that even if notice was untimely, defendant was not prejudiced, as he failed to show how his trial strategy would have changed, and because there was evidence of intent to distribute other than the informant's testimony. Finally, the State concludes that any error in the admission of the other crimes evidence was harmless.
The record shows that defendant filed several motions, including a motion for discovery requesting other crimes evidence. A few days later, the trial court ordered the State to provide defendant discovery. Defendant was subsequently appointed new counsel who filed several motions, including another motion for discovery. The trial court denied new counsel's motion for discovery as moot, noting that discovery had been provided to prior defense counsel and was deemed satisfactory by her, and that moving counsel had "acknowledged receipt thereof."
Subsequently, defendant's motions to suppress the evidence and statements that defendant had filed along with the motion for discovery were heard. At that hearing, Officer Daniel Jewel testified that Sergeant Robert Gerdes had met with an untested informant who informed the officer that he had firsthand knowledge of narcotics distribution by a subject known as "Danny" and a female subject known as "Nell" at 6500 Park Manor. The officer further testified that the informant then took part in a controlled purchase. He explained that after the purchase, the informant turned over crack cocaine and informed him that "Nell" was the person who sold him the narcotics.
Sergeant Gerdes confirmed at that hearing that he had initial contact with the informant, and provided additional details regarding the search of defendant's residence. It is noted that during the cross-examination of Sergeant Gerdes, defense counsel asked questions regarding the informant. At that point the prosecutor objected, arguing that the response "may tend to reveal the identity of the informant." The trial judge overruled the objection and the questioning continued. After listening to the testimony and hearing arguments of counsel, the trial court denied defendant's motions to suppress the evidence and the statements.
On the day of trial, defense counsel argued in an oral motion in limine (after the jury was chosen, but outside the jury's presence) that any testimony related to alleged prior drug purchases by the informant from defendant was prohibited under La. C.E. art. 404, because the State was attempting to show that defendant acted in conformity with his past actions, and that such testimony would be prejudicial under La. C.E. art. 403. The prosecutor responded that any prejudicial effect was outweighed by the probative value, and that he should be allowed to use the informant's testimony regarding his prior purchases of drugs from defendant to establish defendant's intent to distribute in this case.
The prosecutor stated that he first informed the defense on the day of trial that Chad Bridges, the informant, would testify; however, defense counsel was first made aware of the informant's existence when discovery was turned over, since the search warrant discussed the informant and the informant's assertion that defendant *78 and co-defendant (a female) were jointly involved in the retail distribution of cocaine. Defense counsel admitted that he had the information that the prosecutor described, but argued that the State did not provide him any information regarding the identity of the informant, nor whether the drug purchases involved marijuana or cocaine or both. Defense counsel also indicated that the last-minute notice he was given that the State intended to introduce the testimony in question and his lack of information prior to trial was unfair.
After hearing extensive argument from counsel, the trial judge denied the motion, stating in pertinent part:
. . . [i]n this particular case, the evidence that they are seeking to introduce in my opinion goes not to show motive and opportunity and plan and lack of mistake, they go to show an element of the crime which is intent. For that reason, I'm not going to grant your motion.
Evidence of other crimes or bad acts committed by a criminal defendant is generally not admissible at trial. La. C.E. art. 404 B(1); State v. Prieur, 277 So.2d 126, 128 (La.1973). However, when such evidence tends to prove a material issue and has independent relevance other than showing that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to the exclusionary rule. State v. Aleman, 01-743 (La.App. 5 Cir. 1/15/02), 809 So.2d 1056, 1065, writ denied, 02-0481 (La.3/14/03), 839 So.2d 26.
La. C.E. art. 404 B(1) provides:
Other crimes, wrongs, or acts. (1)Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
In order for other crimes evidence to be admitted, certain requirements must be met. Under Prieur, the State must provide written notice to the defendant of the acts it intends to prove, along with the exception to the exclusionary rule upon which it relies. One of the factors enumerated in La. C.E. art. 404(B)(1) must be at issue, and have some independent relevance or be an element of the crime charged. State v. Jackson, 625 So.2d 146, 149 (La.1993); State v. Maise, 99-734 (La. App. 5 Cir. 3/22/00), 759 So.2d 884, 893, writ granted, 00-1158 (La.9/14/01), 795 So.2d 1219, judgment aff'd, 00-1158 (La.1/15/02), 805 So.2d 1141. Prieur further requires that the State show that the defendant committed the other crimes.
Additionally, the probative value of the extraneous evidence must outweigh its prejudicial effect. State v. Maise, supra, 759 So.2d at 894. The burden is on the defendant to show that he was prejudiced by the trial court's admission of other crimes evidence. State v. Dauzart, 02-1187 (La.App. 5 Cir. 3/25/03), 844 So.2d 159.
In the matter before us, defendant was charged with possession with intent to distribute cocaine and marijuana. Thus, the State was required to prove that defendant knowingly and intentionally possessed those drugs with the specific intent *79 to distribute them. La. R.S. 40:966 A and 40:967 A; State v. Cho, 02-274 (La.App. 5 Cir. 10/29/02), 831 So.2d 433, 442, writ denied, 02-2874 (La.4/4/03), 840 So.2d 1213; State v. Manson, 01-159 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 761, writ denied, 01-2269 (La.9/20/02), 825 So.2d 1156. As such, intent is an element of the crimes charged. It is noted that intent was also a contested issue at trial.
Although the State and the defense discussed Prieur evidence at the hearing on the motion in limine and in their briefs to this Court, Prieur was not the basis for the evidence being admitted. The trial judge denied the motion in limine because he concluded that the evidence was offered to establish an element of the crime, the intent to distribute drugs.
Previous attempts to distribute may be considered in establishing intent. State v. Temple, 01-655 (La.App. 5 Cir. 12/12/01), 806 So.2d 697, 709, writ denied, 02-0234 (La.1/31/03), 836 So.2d 58 citing State v. White, 98-91 (La.App. 5 Cir. 6/30/98), 715 So.2d 714, 717, writ denied, 98-2043 (La.11/25/98), 729 So.2d 577. Thus, evidence of defendant's involvement in prior drug deliveries is clearly an exception to the general prohibition against evidence of other crimes. Temple, supra.
Nevertheless, even if the evidence was improperly admitted, an improper reference to other acts evidence is subject to the harmless error rule. State v. Battie, 98-1296 (La.App. 5 Cir. 5/19/99), 735 So.2d 844, 852 (citing State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 101-102). The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error. Id.
In the instant case, we find there was ample evidence, other than the prior transactions, that defendant intended to distribute the drugs found in his residence. Lt. Bruce Harrison was qualified as an expert in the field of the use, packaging, distribution, and value of narcotics. Lt. Harrison indicated that, based on the quantity of drugs (one-and-a-half pounds), the value of the drugs seized ($1,100.00-$1,400.00), the fact that no drug user paraphernalia such as rolling papers or pipes were found in defendant's residence or on his person, and the fact that items associated with being a drug dealer were found in defendant's residence (scales, baggies, weapons, cell phone, currency), defendant was involved in distribution of narcotics and not possession for personal use. Additionally, the evidence presented at trial established that the odor of marijuana was not present in defendant's residence or on his clothing.
In light of the foregoing, we find that the trial court did not err in denying defendant's motion in limine to exclude other crimes evidence.
In the second assignment of error, defendant argues that his original sentences are excessive. After conviction and sentence on the drug charges that are the focus of this appeal, defendant was found to be a second felony offender. Accordingly, the trial court vacated the original sentence on count 2, and sentenced defendant to imprisonment at hard labor for 35 years to be served concurrently with the sentence on count 1. Although the multiple offender proceeding did not affect the sentence on count 1, it did affect the sentence on count 2. This renders this issue moot. State v. Hanson, 00-1168 (La. App. 5 Cir. 12/13/00), 778 So.2d 43, 45.
Defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a *80 request. That review reveals no errors patent which would require corrective action in this case.
For the foregoing reasons we affirm the sentences and convictions in this matter.
AFFIRMED.
NOTES
[1] State v. Prieur, 277 So.2d 126 (La.1973)