WALTER J. ROTHSCHILD, Judge.
 

 I
 
 STATEMENT OF THE CASE
 

 On February 19, 2004, defendant, Kerry J. Curington, and his co-defendant, Clarence Johnson, were indicted and charged with first degree murder of Donell Stipe in violation of LSA-R.S. 14:30. On June 25, 2007, the State amended the charge, as to both defendants, to second degree murder in violation of LSA-R.S. 14:80.1.
 

 On April 28, 2009, defendant proceeded to trial before a twelve-person jury.
 
 [1]
 
 The jury found defendant guilty of second degree murder on April 29, 2009. He was sentenced to life imprisonment without the benefit of probation, parole, or suspension of sentence on June 15, 2009. Defendant appeals.
 

 FACTS
 

 At trial, Samuel Carter testified that the victim, Donnell Stipe, was known as “Red,” and he had known him for over fifteen years. Mr. Carter stated that he was Lwith Mr. Stipe on the evening of December 7, 2003, and they were shooting dice at an apartment on Max Drive in Harvey, Louisiana. A man known as “Lechie” and his girlfriend, Vanessa Nellon, lived at the apartment. According to Mr. Carter, when he arrived at the apartment, Mr. Stipe, Lechie, Kenneth Morton, Wayne White, and a man named “Mervin” were there. Mr. Carter brought $900 with him to the game, but at some point, he left the apartment because he was losing.
 

 According to Mr. Carter, Mr. Stipe called him and asked him to come back to the dice game, because “Chopper,” later identified as defendant, Kerry Curington, had arrived and was betting big. Mr. Carter had previously met defendant when they had gambled at a club. Mr. Carter went back to the apartment where he saw Mr. Stipe, defendant, Lechie, Mervin, Kenneth Morton, Wayne White,.and Leonard Veal in the kitchen where the dice game was taking place. Some people were shooting dice and others were watching. Mr. Carter testified that he joined the dice game and it lasted an hour or two. Only Mr. Stipe, defendant, and Mr. Carter were involved in this game, and Mr. Carter stated that he and Mr. Stipe were winning, and defendant was losing. Eventually, Mr. Carter dropped out of the game, but defendant and Mr. Stipe continued to play. The game ended when defendant lost all of his money.
 

 After the game ended, defendant left the apartment. Then, Mr. Stipe left, followed by Mr. Carter. As he walked to his car, Mr. Carter saw someone in the parking lot who was pretending to urinate on the side of the building. When Mr. Carter got to his car, defendant approached him with a handgun and told him to “give it up,” so Mr. Carter gave him the $1,800 he had in his jacket. Mr. Carter stated that defendant then walked him over to where Mr. Stipe was located in the parking lot. The man who was pretending to urinate on the side of the building ran toward Mr. Stipe with a machine gun. When Mr. Carter put his hand up, the man |4with the machine gun started shooting. Mr. Carter fell to the ground and he heard Mr. Stipe saying, “No, no, no.” Defendant and the other perpetrator fled the scene, and Mr. Carter called the police.
 

 Kenneth Morton testified that he was present on the night that Donell Stipe, whom he knew as “Red,” was killed. Mr. Morton stated that he went with Mr. Stipe
 
 *769
 
 and Wayne White to Leehie’s apartment to play dice. Mr. Carter and Mervin came to the apartment as well. After an hour or two of playing dice, Mr. Carter left. Thereafter, defendant, who was known as “Chopper,” arrived. Mr. Carter came back after Mr. Stipe called him. Mr. Morton testified that he dropped out of the game when the stakes got too high, and only Mr. Carter, Mr. Stipe, and defendant remained in the game. Mr. Carter and Mr. Stipe were winning, and defendant was losing.
 

 According to Mr. Morton, after the game broke up, defendant left first. Thereafter, Mervin, Mr. Carter, and Mr. Stipe left. A couple of minutes later, Mr. Morton, Wayne White, and Leonard Veal walked out. After he took a few steps, Mr. Morton saw Mr. Carter and Mr. Stipe being robbed. Mr. Carter was pinned up against his car by defendant who was pointing a gun at him. Mr. Stipe was parked approximately five to ten feet away from Mr. Carter, and he was pinned against his car by another individual.
 

 When Lieutenant Gray Thurman and Detective Donald Clogher of the Jefferson Parish Sheriffs Office arrived on the scene, Mr. Stipe was dead, lying on his back next to his vehicle. He had sustained multiple gunshot wounds. Dr. Karen Ross, a forensic pathologist and Assistant Coroner for the Jefferson Parish Coroner’s Office, testified at trial that the nine gunshot wounds Mr. Stipe suffered were inflicted by at least two different weapons. Dr. Ross also testified that some lBof the wounds inflicted by each weapon were, on their own, fatal or potentially fatal.
 

 Trial testimony offered by Louise Wal-zer, an expert in firearms evidence and tool mark analysis and a retired member of the Jefferson Parish Crime Laboratory, corroborated Dr. Ross’ opinion. Ms. Wal-zer conducted an examination of the firearms-related evidence, including recovered spent projectiles, and identified two different caliber projectiles. One type of projectile was consistent with a 7.62 mm, or .30 caliber weapon, and the other was consistent with a .40 caliber weapon. Ms. Walzer opined that the 7.62 projectile could have been fired from an AK-47 or an SKS. Ms. Walzer compared a 7.62 projectile found at the scene to material recovered from Mr. Stipe’s t-shirt during the autopsy and determined that they were fired from the same weapon. Ms. Walzer also compared .40 caliber projectiles found at the scene with a .40 caliber projectile recovered from Mr. Stipe’s body and determined that they were fired by the same weapon. Ms. Walzer testified that thirteen 7.62 cartridge casings found on the scene were all fired from the same weapon. She also testified that six .40 caliber casings found on the scene were all fired from the same weapon.
 

 During his investigation, Detective Clo-gher interviewed several witnesses, including Samuel Carter, Kenneth Morton and Vanessa Nellon. Mr. Carter, who had called the police shortly after the incident, was later interviewed by detectives at the hospital and then brought to the investigations bureau. Mr. Carter had stayed on the ground after the shooting, during which his hand and head were grazed by bullets, and left the scene after the perpetrators fled. Mr. Carter also indicated that although he did not know the two perpetrators by name, he was acquainted with both of them, and he provided Detective Clogher with the nickname “Chopper.”
 

 | fiAfter discovering defendant’s full name, Detective Clogher was able to compile a photographic lineup and present it to Mr. Carter and Mr. Morton. Mr. Carter and Mr. Morton positively identified defendant as the perpetrator who committed the robbery of Mr. Carter and Mr. Stipe, and
 
 *770
 
 Mr. Carter positively identified defendant as the perpetrator who shot Mr. Stipe with a handgun.
 

 LAW AND DISCUSSION
 

 In his first assignment of error, defendant argues that the trial court erred by allowing “other crimes” evidence to be admitted at trial. Specifically, defendant contends that the State improperly introduced evidence of an unrelated shooting in Orleans Parish and an alleged bribery of a witness, Samuel Carter, by defendant. Defendant argues that the State did not comply with the requirements of
 
 State v. Prieur, 271
 
 So.2d 126 (La.1973), because it failed to provide written notice of its intent to use this other crimes evidence, and that the trial court failed to charge the jury as to the limited purpose for which the evidence was to be received. Finally, defendant contends that, because the admission of the other crimes evidence severely prejudiced him and contributed to the jury’s verdict, he is entitled to a new trial.
 

 Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. LSA-C.E. art. 404(B)(1);
 
 State v. Jackson,
 
 05-923, p. 10 (La.App. 5 Cir. 3/28/06), 926 So.2d 72, 78,
 
 unit denied,
 
 06-1589 (La.1/8/07), 948 So.2d 121;
 
 Prieur,
 
 277 So.2d at 128. However, when evidence of other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this rule.
 
 Jackson,
 
 05-923 at 10, 926 So.2d at 78.
 

 |7Pursuant to LSA-C.E. art. 404(B)(1), evidence of other crimes may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. However, in order for other crimes evidence to be admitted under LSA-C.E. art. 404(B)(1), certain requirements must be met. See
 
 State v. Page,
 
 08-531, p. 13 (La.App. 5 Cir. 11/10/09), 28 So.3d 442, 451,
 
 unit denied,
 
 09-2684 (La.6/4/10), 38 So.3d 299; and
 
 State v. Schaller,
 
 08-522, pp. 23-24 (La.App. 5 Cir. 5/26/09), 15 So.3d 1046, 1060,
 
 writ denied,
 
 09-1406 (La.2/26/10), 28 So.3d 268. First, pursuant to
 
 Prieur,
 
 the State must provide written notice to the defendant of the acts it intends to prove, along with the exception to the exclusionary rule upon which it relies.
 
 Page,
 
 08-531 at 13, 28 So.3d at 451. Additionally, one of the factors enumerated in the article must be at issue, have some independent relevance, or be an element of the crime charged.
 
 Id.
 
 Finally,
 
 Prieur
 
 requires that the State show that the defendant committed the other crimes.
 
 Jackson,
 
 05-923 at 11, 926 So.2d at 78. This Court has recognized that not every violation of
 
 Prieur
 
 notice requires reversal, and a defendant must show prejudice before he can complain of such a violation.
 
 State v. Ridgley,
 
 08-675, p. 14 (La.App. 5 Cir. 1/13/09), 7 So.3d 689, 698,
 
 unit denied,
 
 09-0374 (La. 11/6/09), 21 So.3d 301.
 

 The probative value of the extraneous evidence must outweigh its prejudicial effect. LSA-C.E. art. 403;
 
 Page,
 
 08-531at 13, 28 So.3d at 451. The burden is on the defendant to show that he was prejudiced by the admission of the other crimes evidence.
 
 Jackson,
 
 05-923 at 11, 926 So.2d at 78. Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence pursuant to LSA-C.E. art 404(B)(1) will not be disturbed.
 
 Schal-ler,
 
 08-522 at 24,15 So.3d at 1061.
 

 |
 
 aEvidence of Unrelated Orleans Parish Shooting
 

 Defendant filed a Motion in Limine to Exclude Ballistics Evidence on March 2,
 
 *771
 
 2005. The record indicates that defendant proceeded to trial without a ruling on the Motion in Limine. The State ultimately questioned its firearms expert, Louise Walzer, about ballistics evidence recovered in this case as well as casings recovered from an incident in Orleans Parish which were given to her for comparison to the casings recovered in the instant homicide. Specifically, Ms. Walzer testified that the nine casings from the Orleans Parish incident matched the casings in the instant case. Defendant did not offer any objection during Ms. Walzer’s testimony regarding the Orleans Parish incident. After the State tendered the witness, defense counsel cross-examined Ms. Walzer regarding the Orleans Parish casings.
 

 If a defendant does not object to the trial court’s failure to rule on a motion prior to trial, the motion is considered waived.
 
 State v. Cummings,
 
 07-686, pp. 8-9 (La.App. 5 Cir. 1/22/08), 977 So.2d 135, 141,
 
 writ denied,
 
 08-0471 (La.9/26/08), 992 So.2d 984;
 
 State v. Ruffin,
 
 02-798, p. 16 (La.App. 5 Cir. 12/30/02), 836 So.2d 625, 636,
 
 unit denied,
 
 03-3473 (La.12/10/04), 888 So2d 831. Additionally, to preserve the right to seek appellate review of an alleged trial court error, the party alleging the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. LSA-C.Cr.P. art. 841;
 
 Cummings,
 
 08-686 at 9, 977 So.2d at 141. The purpose behind this rule is to put the trial judge on notice of an alleged irregularity, thereby allowing the trial judge the opportunity to make the proper ruling and correct any claimed prejudice to the party alleging the error.
 
 Id.
 

 In the present case, because defendant proceeded to trial without a ruling on the Motion in Limine and because defendant failed to state an objection | contemporaneously with the occurrence of the alleged error, including the grounds for any such objection, this issue has been waived and will not be considered.
 

 Evidence of Alleged Attempted Bribery by Defendant of Samuel Carter
 

 At trial, the prosecutor asked Samuel Carter on direct examination if he had spoken with defendant after identifying defendant in the photographic lineup. Mr. Carter responded affirmatively, stating that he had received a call from defendant. When the prosecutor asked what was said by defendant during that conversation, defense counsel objected on hearsay grounds, and a bench conference was held outside of the presence of the jury. After hearing argument from both sides, the trial judge overruled defense counsel’s objection, noting that the statement, which was being offered to explain why Mr. Carter had changed his story with regard to his ability to identify defendant, constituted an admission against interest. Defense counsel further objected to the introduction of the evidence as other crimes evidence. Noting that defense counsel’s subsequent objection did not change his ruling, the trial judge again overruled defense counsel’s objection.
 

 Thereafter, in response to the prosecutor’s question, Mr. Carter testified that defendant told him “[y]eah, my people supposed to be bringing you something.” Mr. Carter testified that he understood this to mean that he was being offered “money,” and that he declined defendant’s offer. Sometime after the conversation occurred, Mr. Carter was approached at his grandmother’s house by a private investigator working for defendant. Mr. Carter gave a recorded statement to the private investigator, in which he stated that he was unable to identify the perpetrator who committed the robbery and the shooting. This statement directly contradicted the
 
 *772
 
 prior statements given by Mr. Carter to the police.
 

 At trial, Mr. Carter testified that he was scared to talk to the investigator, that he had been hiding from defendant at his grandmother’s house, and that there had 11ftbeen attempts on his life. When cross-examined about telling a different story to the private investigator, Mr. Carter stated that he did not want the investigator to know that he saw defendant because he knew that the investigator was going to report back to defendant. Mr. Carter testified that telling this story made him feel safe.
 

 The Louisiana Supreme Court has held that evidence of attempts by a defendant to intimidate witnesses for the State has substantial probative value, and that actions on the part of the defendant which are designed to prevent witnesses from testifying will give rise to an inference that the defendant acted from an awareness or consciousness of his own guilt.
 
 State v. Johnson,
 
 426 So.2d 95, 102 (La.1983);
 
 State v. Burnette,
 
 353 So.2d 989, 992 (La. 1977).
 

 In
 
 State v. Graves,
 
 301 So.2d 864, 866 (La.1974), the Louisiana Supreme Court stated:
 

 Although an attempt to bribe or influence a witness is a criminal offense under Louisiana law, La.R.S. 14:118, an attempt by an accused in a criminal prosecution to induce a witness to testify falsely may be introduced in evidence against him. This evidence is admissible since it leads to an inference that, if admitted, it would operate unfavorably to the accused.... Before such attempts are admissible, however, there must be some evidence to connect the accused therewith or to show that the attempt by a third person was made with the authorization of the accused.
 

 In the present case, Mr. Carter’s testimony regarding the attempted bribery clearly has substantial probative value to explain why Mr. Carter gave a different statement to the private investigator about his ability to identify defendant as the perpetrator. In overruling defense counsel’s objection, the trial court evidently concluded that the probative value of the evidence outweighed its prejudicial effect, and this conclusion is supported by the record. Based on the' record before us along with the applicable law, we find that the trial court did not err in allowing testimony regarding the attempted bribery of Samuel Carter by defendant.
 

 |
 
 uJury Instructions
 

 Defendant contends that the trial court failed to charge the jury as to the limited purpose for which the “other crimes” evidence was to be received. When “other crimes” evidence is admitted in a jury trial, the court, upon the defendant’s request, must charge the jury as to the limited purpose for which the evidence is to be considered.
 
 State v. Nguyen,
 
 04-321, p. 15 (La.App. 5 Cir. 9/28/04), 888 So.2d 900, 909-10,
 
 writ denied,
 
 05-0220 (La.4/29/05), 901 So.2d 1064. Moreover, the final jury charge must contain an instruction regarding the limited purpose for which the “other crimes” evidence was received.
 
 Id.
 
 at 15, 888 So.2d at 910. At that time, the court must instruct the jurors that the defendant cannot be convicted of any charge other than the one named in the indictment, or one i-esponsive thereto.
 
 Id.
 

 LSA-C.Cr.P. art. 801(C) provides:
 

 A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds
 
 *773
 
 therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.
 

 The requirements of
 
 Prieur
 
 notwithstanding, this Court has held that a defendant is required to make a timely objection under article 801 in order to preserve a jury charge issue for review.
 
 State v. Dauzart,
 
 02-1187, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 159,167.
 

 In the instant case, at the time the evidence of the Orleans Parish shooting was introduced, defendant failed to request a limiting charge to the jury. Thus, the trial judge was not required to issue a limiting instruction at that time. During the discussion regarding the attempted bribery of Mr. Carter by defendant, defense counsel appears to have made an initial attempt at requesting a jury instruction, [^stating “[wjill you give a jury instruction as to that particular Court’s statement? That’s like you’re telling us that it’s the same thing to go before a jury, that it may be they would have to take it and they determine the credibility of it. Impose a jury instruction as to.... ” The trial judge stated that he would “deal with that later,” but it does not appear that defense counsel addressed the matter again or made a request for a specific instruction.
 

 A review of the final jury instructions reveals that there was no mention of “other crimes” evidence. However, defendant neither requested a special jury charge nor timely objected to the final jury charges. Thus, defendant failed to properly preserve this issue for appellate review. Based on the foregoing, this assignment of error is without merit.
 

 In his second assignment of error, defendant argues that defense counsel’s assistance was defective because he failed to object at trial to the “other crimes” evidence of the ballistics report and the State’s reference to the unrelated shooting incident in Orleans Parish. Defendant also contends that defense counsel’s assistance was ineffective because he failed to request a charge to the jury as to the limited purpose for which the “other crimes” evidence was to be received. Defendant alleges that the erroneous admission of other crimes evidence was not harmless and contributed to the jury verdict. As such, defendant contends that he was denied his Sixth Amendment right to effective assistance of counsel.
 

 Generally, a claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief rather than on direct appeal, so as to afford the parties an adequate record for review.
 
 State v. Robertson,
 
 08-297, p. 12 (La.App. 5 Cir. 10/28/08), 995 So.2d 650, 659,
 
 writ denied,
 
 08-2962 (La.10/9/09), 18 So.3d 1279. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly ] ^raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy.
 
 State v. Grimes,
 
 09-2, p. 10 (La.App. 5 Cir. 5/26/09), 16 So.3d 418, 426,
 
 writ denied,
 
 09-1517 (La.3/12/10), 28 So.3d 1023.
 

 A criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution.
 
 Grimes,
 
 09-2 at 10,16 So.3d at 425. To prove ineffective assistance of counsel, a defendant must show both that (1) his attorney’s performance was deficient, and (2) the deficiency prejudiced him.
 
 Id.; Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). It is unnecessary to address the issues of both counsel’s per
 
 *774
 
 formance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components.
 
 State v. Serigny,
 
 610 So.2d
 
 857, 860
 
 (La.App. 1 Cir.1992),
 
 writ denied,
 
 614 So.2d 1263 (La. 1993).
 

 To establish the deficiency prong of the test, the defendant must show that counsel made errors so serious that he was not functioning as the “counsel” guaranteed by the Constitution.
 
 Strickland,
 
 466 U.S. at 687, 104 S.Ct. at 2064. To establish prejudice, the defendant must show that the errors were so serious that the defendant was deprived of a fair trial, a trial whose result is reliable.
 
 Id.
 
 The defendant must prove actual prejudice before relief will be granted.
 
 Serigny,
 
 610 So.2d at 860. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceeding.
 
 Id.
 
 Rather, he must show that but for counsel’s deficient performance, there is a reasonable probability the outcome of the trial would have been different.
 
 State v. Robinson,
 
 01-1305, p. 18 (La.App. 4 Cir. 4/17/02), 820 So.2d 571, 582,
 
 writ denied,
 
 02-1640 (La.5/30/03), 845 So.2d 1068.
 

 _LyThe Sixth Amendment does not guarantee errorless counsel or counsel judged ineffective by hindsight.
 
 LaCaze,
 
 99-0584, p. 20 (La.1/25/02), 824 So.2d 1063, 1078,
 
 cert, denied,
 
 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). Given that opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions, and an attorney’s level of representation may not be determined by whether a particular strategy is successful.
 
 State v. Reichard,
 
 05-1262, p. 5 (La.App. 4 Cir. 6/21/06), 935 So.2d 727, 731. Thus, “trial strategy” type errors do not constitute ineffective assistance of counsel.
 
 Reichard,
 
 05-1262 at 5, 935 So.2d at 731.
 

 In the instant case, a review of the record reveals that it was defense counsel’s trial strategy to discredit Samuel Carter’s identification of defendant, and he referred to the evidence from the Orleans Parish investigation in order to support his theory that someone other than defendant committed the murder. In his opening statement, defense counsel referred to the Orleans Parish investigation and the recovery of shell casings from the home of Jamal Burton. Defense counsel also tied the Orleans Parish shooting to a man named Akiem Duez. Further, defense counsel began his cross examination of Ms. Walzer by stating “I’ve just got a couple of questions for you, and really honing in on that New Orleans connection with this case,” then questioned Ms. Walzer about whether it was possible to obtain fingerprint evidence from spent casings to determine “who really put these bullets in this gun.”
 

 During his cross-examination of Detective Clogher, defense counsel stressed that there was no fingerprint or DNA evidence to connect defendant to the crime. After inquiring whether there was anything of “evidentiary value that led you to Mr. Cur-ington,” defense counsel questioned Detective Clogher about Mr. Carter and Mr. Morton’s identifications, asking “The only evidence that you have that | ^[Defendant] committed this crime was allegedly a statement by Mr. Carter and Mr. Morton, correct?” During his cross-examination of Samuel Carter, defense counsel aggressively challenged Mr. Carter’s identification of defendant, stressing that Mr. Carter had given a false name to the police during his 911 call and that he told defendant’s private investigator that he could not identify the perpetrator.
 

 Additionally, defense counsel commenced his closing argument by stating that “the important thing is who commit
 
 *775
 
 ted the crime.” He heavily stressed the lack of physical evidence connecting defendant to the crime, and appealed to the jury to “remember the link to New Orleans. They found casings at someone else’s house. The detective testified to that. Remember the link.” Finally, defense counsel again attempted to discredit Samuel Carter’s identification by reiterating that Mr. Carter had given a different story to the private investigator.
 

 The introduction of evidence related to the Orleans Parish shooting was consistent with the trial strategy utilized by defense counsel, and the record does not show that counsel’s performance was deficient. As stated above, “trial strategy” type errors do not constitute ineffective assistance of counsel.
 

 Because defendant has not shown that his counsel’s performance was deficient for failing to object to the introduction of evidence regarding the Orleans Parish shooting and failing to request a limiting jury instruction, he has not proven his ineffective assistance of counsel claim. This assignment of error is without merit.
 

 In his third assignment of error, defendant contends that the trial court erred by allowing into evidence alleged statements made by defendant to Samuel Carter during a telephone conversation, because defendant was not given pre-trial notice of the telephone call in which defendant allegedly attempted to bribe Mr. Carter. Defendant alleges that its admission into evidence despite objection prevented him hfifrom properly preparing a defense, and that the prejudice suffered by defendant as a result of its admission constitutes reversible error.
 

 LSA-C.Cr.P. art. 768 provides:
 

 Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state’s opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
 

 The purpose of the notice requirement of Article 768 is to prevent surprise and to allow the defendant adequate time for the preparation of a defense in light of the inculpatory statement.
 
 State v. Billiot,
 
 421 So.2d 864, 867 (La.1982);
 
 State v. Cathey,
 
 493 So.2d 842, 861 (La. App. 5 Cir.1986),
 
 writ denied,
 
 500 So.2d 419 (La.1/23/87),
 
 cert, denied,
 
 481 U.S. 1049, 107 S.Ct. 2181, 95 L.Ed.2d 838 (1987). An “inculpatory statement” within the meaning of this article refers to an out of court admission of incriminating facts made by the defendant after the crime has been committed.
 
 State v. Phillips,
 
 94-673, p. 11 (La.App. 5 Cir. 3/1/95), 659 So.2d 785, 790. Reversal is not mandated when the defendant does not show that he was prejudiced by the State’s failure to provide written notice.
 
 Id.; Cathey,
 
 493 So.2d at 851. If a defendant merely asserts that he was “surprised,” but offers nothing to show how he would have prepared for trial differently, a reversal is not warranted.
 
 Cathey,
 
 493 So.2d at 851. The failure to provide a defendant with the notice required by Article 768 may be harmless error where the remaining evidence of guilt is overwhelming.
 
 State v. Breaux,
 
 473 So.2d 923, 924 (La.App. 3 Cir.1985).
 

 As defendant claims, there is no indication in the record that the State filed a pre-trial notice under LSA-C.Cr.P. art. 768. Defendant offers some indication of how advanced notice would have affected his trial preparation, asserting that, had he been aware of the statement, he could have conducted an investigation and subpoenaed phone records to reveal whether the phone call was made.
 

 
 *776
 
 |17Although the State did not file the required pre-trial notice of its intent to use defendant’s statements at trial, based on the record before us, we find that the admission of the statements was harmless. The State produced overwhelming evidence to establish defendant’s guilt. Both Mr. Carter and Mr. Morton positively identified defendant as the perpetrator who committed the robbery of Mr. Carter and Mr. Stipe, and Mr. Carter positively identified defendant as the perpetrator who, armed with a handgun, shot Mr. Stipe. Mr. Carter also testified that the other perpetrator pointed a machine gun at him and started shooting.
 

 Testimony offered by Dr. Ross confirmed that Mr. Stipe died as a result of multiple gunshot wounds, and that the wounds Mr. Stipe suffered were inflicted by at least two different weapons, one of which was consistent with a 7.62 caliber weapon and the other consistent with a high caliber (i.e. .40 or .45 caliber) weapon. Dr. Ross also testified that some of the wounds inflicted by each weapon were, on their own, fatal or potentially fatal.
 

 Any error in failing to provide the notice required by LSA-C.Cr.P. art. 768 was harmless. Accordingly, this assignment of error is without merit.
 

 In his fourth and final assignment of error, defendant contends that the trial court erred by denying his Motion to Quash based on the State’s failure to commence trial within the applicable time limitations of LSA-C.Cr.P. art. 578. Defendant argues that this delay severely prejudiced his ability to prepare a defense for trial, because trial preparation and investigation were hampered by the delay and many witnesses were unavailable for trial.
 

 The State responds that the trial court denied defendant’s Motion to Quash because it concluded that there had not been a two-year period without interruption or suspension. The State further contends that defendant requested 24 continuances and, as such, cannot now claim that he was tried in an untimely 11Rmanner. The State also alleges that each of the motions filed by defendant in the present case extended the State’s deadline to commence trial by another year, pursuant to LSA-C.Cr.P. art. 580. Finally, the State contends that defendant has failed to show how he was prejudiced by the alleged delay.
 

 As a general matter, the State has three years from the institution of prosecution to commence a trial in a capital felony case, and two years from the institution of prosecution to commence a trial in a non-capital felony case. LSA-C.Cr.P. art. 578(A)(1) and (2). The Louisiana Supreme Court has explained that the “statutory periods of limitation ‘enforce the accused’s right to a speedy trial and ... prevent the oppression caused by suspending criminal prosecutions over citizens for indefinite periods of time.’ ”
 
 State v. Romar,
 
 07-2140, p. 3 (La.7/1/08), 985 So.2d 722, 725. The date of institution of prosecution is the date when the indictment is returned or the bill of information is filed.
 
 State v. Smith,
 
 07-959, p. 5 (La.App. 5 Cir. 3/11/08), 982 So.2d 831, 834.
 

 In the present case, defendant filed a Motion to Quash, which was denied by the trial court on April 22, 2009. Defendant sought relief from the trial court’s denial of his motion by filing a writ application with this Court. On April 27, 2009, this Court denied defendant’s writ application, stating that “upon review of the writ application and attached documents, we find no error in the trial court’s denial of defendant’s motion to quash the indictment. Accordingly, this writ application and the request for a stay order are denied.”
 

 
 *777
 
 An appellate court’s denial of supervisory writs does not bar reconsideration of an issue on appeal, nor does it prevent the appellate panel from reaching a different conclusion on the issue.
 
 In re K.R.W., Jr.,
 
 03-1371 (La.App. 5 Cir. 5/26/04), 875 So.2d 903, 905. Reconsideration of a prior ruling is warranted when, in light of a subsequent trial record, it is apparent that the determination was 113patently erroneous and produced unjust results.
 
 Id.
 
 Judicial efficiency demands that this Court accord great deference to its prior rulings.
 
 State v. Davis,
 
 03-488 (La.App. 5 Cir. 11/12/03), 861 So.2d 638, 642, n. 2,
 
 vnit denied,
 
 03-3401 (La.4/2/04), 869 So.2d 874.
 

 Defendant has not shown that this Court’s prior denial of his writ application regarding the Motion to Quash was patently erroneous and produced unjust results. Moreover, defendant has produced no new evidence to support this Court’s reconsideration of the issue. Nevertheless, we have reviewed and considered the merits of defendant’s claim again, and we have reached the same conclusion that the trial court did not err in denying defendant’s Motion to Quash.
 

 Once a defendant shows that the state has failed to commence trial within the time periods specified by the general rule governing time limitations for commencement of trial, the state bears a heavy burden to demonstrate that either an interruption or a suspension of the time limit tolled prescription.
 
 State v. Morris,
 
 99-3235, p. 1 (La.2/18/00), 755 So.2d 205.
 

 Defendant was indicted for first degree murder on February 19, 2004. Thus, barring interruption under LSA-C.Cr.P. art. 579 or suspension under LSA-C.Cr.P. art. 580 of the time delay, the State originally had until February 19, 2007 to commence trial. The amendment of the bill of information to second degree murder on June 25, 2007, had no effect on the original three-year time limitation. See
 
 State v. Wilson,
 
 363 So.2d 481, 483 (La.10/9/78); and
 
 State v. Peters,
 
 546 So.2d 557, 559 (La.App. 1 Cir.1989). Trial did not begin until April 28, 2009. The issue is whether the State met its burden of proving an interruption or suspension of the time limit.
 

 LSA-C.Cr.P. art. 579 provides for the interruption of the time limitation for commencing trial, as follows:
 

 12pA. The period of limitation established by Article 578 shall be interrupted if:
 

 (1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
 

 (2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state; or
 

 (3) The defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record.
 

 B. The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.
 

 LSA-C.Cr.P. art. 580 provides for the suspension of the time limitation for commencing trial, as follows:
 

 When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no case shall the state have less than one year after the ruling to commence the trial.
 

 
 *778
 
 A motion to suppress evidence and a motion for preliminary hearing are both preliminary pleas under article 580 which suspend the running of the prescriptive period.
 
 State v. Clay,
 
 07-0698, p. 5 (La.App. 4 Cir. 10/24/07), 970 So.2d 657, 660, n. 5. Likewise, a motion for continuance filed by defendant and joint motions to continue are preliminary pleas under article 580, which suspend the running of the prescriptive period.
 
 Clay,
 
 07-0698 at 5, 970 So.2d at 660, n. 5;
 
 State v. Fish,
 
 05-1929 (La.4/17/06), 926 So.2d 493.
 

 Over the course of the five-year pen-dency of this trial, the parties requested approximately 30 continuances. A review of the record reveals that defendant requested approximately 14 continuances and the parties jointly requested approximately 10 continuances. In addition, defendant filed no less than 25 motions, many of which constituted preliminary pleas that suspended the running [⅞1 of prescription and had the effect of delaying the trial. The impact of Hurricane Katrina hitting the New Orleans area in 2005 also delayed the proceedings in this matter. Despite the significant amount of time that passed between the institution of prosecution and trial, there was consistent activity in the case and the significant delays were attributable in part to defendant.
 

 Based on all of the information in the record, the State met its burden of showing that interruptions and suspension of the time limitations for bringing defendant to trial prevented prescription from running in this case. Accordingly, this assignment of error is without merit.
 

 ERRORS PATENT
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975); and
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). No errors requiring corrective action were noted.
 

 DECREE
 

 For the foregoing reasons, we affirm defendant’s conviction and sentence.
 

 AFFIRMED.
 

 [1]
 

 . Defendant filed a Motion to Sever Defendants, which was granted on April 22, 2009.