WALTER J. ROTHSCHILD, Judge.
^Defendant, Clevern Granger, was charged with one count of aggravated burglary in violation of LSA-R.S. 14:60 (count one), and one count of forcible rape in violation of LSA-R.S. 14:42.1 (count two).[1] Defendant pled not guilty to both counts at arraignment. A competency hearing was held on July 15, 2009, at which time defendant was found incompetent to stand trial *578 and was then remanded to East Louisiana State Hospital. On April 29 and May 5, 2010, defendant’s competency was re-evaluated, and the court again found defendant incompetent to stand trial. At the conclusion of the third competency hearing held on January 19 and February 2, 2011, the trial court found defendant competent to stand trial. Prior to trial, the State filed a Notice of Intent to Use Evidence of Other Crimes, which was heard and granted by the trial court on August 15, 2011.
On August 17, 2011, defendant was found guilty on both counts by a 12-person jury. On August 29, 2011, defendant filed a Motion for Judgment of Acquittal, which was denied by the trial court prior to sentencing. Defendant was then sentenced to 80 years at hard labor on counts one and two, with credit for time | ^served. The trial court further ordered that defendant’s 80 year sentences be served concurrently, and that the first two years of defendant’s sentence on count two be served without the benefit of parole, probation or suspension of sentence. The trial court also issued a permanent Louisiana Uniform Abuse Prevention Order, which the defendant refused to sign. After sentencing, defendant filed a Motion for New Trial asserting that defendant did not receive a fair trial because the State was permitted to submit evidence of defendant’s prior bad acts. The trial court denied defendant’s motion for new trial.
Defendant also filed a Motion to Withdraw as Counsel of Record and Motion to Appoint the Louisiana Appellate Project, which was granted by the trial court. Defense counsel failed to file a Motion for Appeal. However, pursuant to an application for post-conviction relief filed by the defendant, the trial court issued an order that it would construe defendant’s prior motion as a request for appeal, and thus ordered defendant’s motion for appeal granted. The instant appeal follows.

FACTS

The defendant and the victim are natives of Trinidad where they met and were married in February of 2000. The couple moved to New Orleans in November of 2001 and had two children during their marriage. During her testimony the victim described her marriage to the defendant as “rocky,” and included both verbal and physical abuse inflicted by the defendant. According to the victim, the first incident of physical abuse occurred in 2004 when they had a physical confrontation over bills and another woman the defendant had been seeing. During that incident, the victim testified that the defendant placed a chair over her neck, and when he moved the chair, “he came down on top” of her, and “slapped [her] around.” As a result, the victim testified that she suffered injuries to |4her back, chest, and neck, but did not report the incident to the police for fear that he would hurt or kill her. The victim testified that the defendant had told her that if she ever went to the police he would “finish what he started.” Six months later, the defendant engaged in another physical altercation with the victim where he slapped her across the face after she asked him if they could take their daughter out for her graduation. The victim moved residences several times to distance herself from the defendant but the physical and verbal abuse continued. In May of 2008 the victim obtained a restraining order against the defendant. Despite obtaining the restraining order, the harassment and abuse by the defendant did not stop. The victim testified that she moved to five different residences to avoid the defendant but he always found her.[2]
*579 By December of 2008, the victim and defendant were divorced and the victim had moved into an apartment located at 937 W. Monterey in Gretna.[3] The victim testified that the defendant was not on the lease and did not have a key to the apartment.[4] The victim recalled that while at the apartment on December 29, 2008, she called the police to report an incident which began the previous evening where the defendant had spent most of the night banging on her windows and doors. The victim further testified that the defendant had turned off the electrical power to her apartment. And although the victim asked defendant several times to leave, he refused. According to the victim, despite the finalization of their divorce, the defendant would continue to show up at her home and at her place of employment.
|fiDeputy Gerald Favaloro, of the Jefferson Parish Sheriffs Office, testified regarding the December 29, 2008 incident. Specifically, Deputy Favaloro testified that he responded to a call for service at an apartment located at 937 W. Monterey Court.[5] Upon arrival, Deputy Favaloro testified that he met with the victim who appeared seared and who informed him that her ex-husband had been at the apartment all night banging on her doors and windows. While at the scene, the victim also showed Deputy Favaloro her 2007 divorce papers. Upon learning of their divorce, and after defendant refused to provide the officers with his identification, the defendant was asked to leave the property. Deputy Favaloro explained that the defendant refused to leave the premises so he and the other officers on the scene attempted to handcuff the defendant but were initially unsuccessful because the defendant pulled his arms away and began swinging at the officers. Eventually the officers were forced to use pepper spray to detain the defendant. Deputy Favaloro testified that he sustained a scratch to his arm as a result of the incident. On cross-examination, Deputy Favaloro testified that the defendant was arrested for trespassing, staying after forbidding, resisting an officer, and battery on a police officer.
The victim recalled another incident involving the defendant which took place on March 1, 2009, when the defendant’s sister-in-law asked the victim if the defendant could watch the children while she was at *580 work. The victim agreed, but when she arrived home that evening and asked the defendant to leave, he refused. The defendant finally left after she gave him $20.00. However, when the victim ^finished preparing for bed that evening, she found the defendant hiding behind a door in her apartment wearing white gloves. The victim testified that when she started to scream, he put his hand over her mouth, told her to “shut up,” and began hitting her as he held her down on the floor. The victim further testified that the defendant had a machete with him. The fighting continued throughout the night and into the next morning until the defendant permitted the victim to go to work upon the condition that she not tell anyone what had happened. The victim called the police the next day to report the incident. The 911 tape concerning this incident was played for the jury. On the tape the victim was heard telling the operator that the defendant beat her up and threatened to kill her if she told anyone about the incident. The victim further told the operator that the defendant was stalking her, calling her phone at all hours, and that the defendant had even broken into her house, beat her up and threatened to kill her if she told anyone. The victim stated that she felt like she was under house arrest in her own home and she needed all the help she could get.
Deputy Marvin Cephus, of the Jefferson Parish Sheriffs Office, testified regarding the March 1, 2009 incident. On that date, Deputy Cephus responded to a domestic disturbance at 937 W. Monterey Court. Deputy Cephus testified that the victim had called in a complaint concerning her ex-husband, the defendant, who had been following her from her home and place of employment. Deputy Cephus further testified that the victim advised him that the defendant had even entered her home one day without her knowledge, and was found standing in a corner behind a door wearing latex gloves. Deputy Cephus described the victim’s demeanor as nervous and upset. The victim indicated that she had a restraining order against the defendant but that it had expired.
|7A few days later, on March 6, 2009, the subject incident took place. According to the victim, she had just returned home from work when she noticed that her trash was “all over the place.” Fearing that someone had been at her house, the victim asked her friend to walk through the house to make sure there was nobody inside. After checking the house and finding it empty, her friend left and the victim proceeded to re-enter her house when the defendant jumped out from behind her carrying a blunt object in his hand. The defendant then pushed her to the floor, put one hand on her mouth and another around her neck, and placed his knees on her chest, making it difficult to breathe. Next the defendant laid on top of the victim and began to push the blunt object into her throat; she attempted to escape, however, the fight continued to escalate as the victim was pushed against the wall and the defendant threatened to kill her. Specifically the defendant stated: “I’m going to kill you, I’m going to kill you, this what you going to do to me? ... I’m going to get what’s mine, I’m going to get what I came here for. You’re my property, you’re giving it to everybody else. You’re like a little slut ...” The victim testified that the defendant tore her pants off, pushed her onto the bed and engaged in sexual intercourse, and later oral sex, with her.[6] The victim resisted but was unable *581 to stop him. At one point she attempted to hit the defendant with a heavy vase but he caught her and started beating her again.
The next morning, the victim pleaded with the defendant to let her go to work. After finally agreeing, he took her keys and told her that he would be waiting for her when she got back. The victim testified that she did not immediately go to the police station to report the crime because she was scared, so |sshe went into work. It was immediately apparent to her coworkers that something was wrong, so someone else performed her daily job duties due to her condition. After work, and having consulted a friend, the victim testified that she went to the police station to report the incident.
Deputy Dwayne Rullman, of the Jefferson Parish Sheriffs Office, testified that on March 7, 2009, the victim came to the Second District police station to report a rape. The victim indicated to Deputy Rullman that when she arrived at her residence the night before, she felt somebody push something into the lower portion of her back, push her inside of her residence, and then climb on top of her. Deputy Rullman testified that the victim recognized the perpetrator as her ex-husband. The victim also explained to Deputy Rull-man that while on top of her, the defendant beat her up, put her on the couch, and would not let her leave. Deputy Rull-man further testified that the victim advised him that the next morning, the defendant indicated that he was going to rape her, and that she screamed and pled him not to. The victim further recalled to Deputy Rullman that he told the defendant that the least he could do was put a condom on if he was going to rape her, and that the defendant complied.[7] The victim then told Deputy Rullman that the defendant allowed her to get dressed for work, and that after work, she went to the police station to report the incident.[8] Deputy Rullman testified that he noticed marks on the defendant’s chest area, and further recalled that the victim complained of pain in her right arm and lower back and numbness in her neck.[9] After interviewing the victim, Deputy Rullman requested that Crime Scene and additional deputies be dispatched to the scene.
|flDeputy Eric Blanford, also of the Jefferson Parish Sheriffs Office, testified that on March 7, 2009, he assisted in the apprehension of the defendant. Deputy Blan-ford testified that he first came into contact with the victim while at the Second District police station. While there, Deputy Blanford testified that the victim provided a description of the defendant, and executed a consent to search form for her residence located at 937 W. Monterey in Gretna. The victim further advised him that nobody was supposed to be in her home. Upon arriving at the victim’s resi *582 dence, Deputy Blanford testified that through one of the windows he observed a male fitting the description of the suspect. Deputy Blanford further testified that he knocked on the front door and the defendant answered. When Deputy Blanford identified himself and advised the defendant that he was being arrested, the defendant backed into the apartment, and locked the door, forcing Deputy Blanford to kick down the metal screen security door of the apartment. Once inside the apartment, the defendant resisted Deputy Blanford by pushing him off in an attempt to evade arrest. Deputy Blanford testified that he was forced to use “OC spray” to detain the defendant.
Sergeant Rodney Naumann, of the Jefferson Parish Sheriffs Office Crime Scene Division, testified that he was tasked with assisting in the location of evidence at the victim’s residence. Sergeant Naumann testified that he photographed a pair of shoes with the sole removed, a black top, and a pair of blue pants that had been retrieved from the trash.[10] Sergeant Nau-mann further testified | mthat the black top and blue pants were torn.[11] Sergeant Naumann also testified that a condom wrapper was recovered from the bathroom trashcan.[12]
After defendant was arrested, the victim testified that he contacted her several times. Specifically, in a letter dated June 12, 2009, he wrote “[w]ives submit to your own husbands as to the Lord ...” Also, on June 11, 2009, the defendant wrote “[d]id you also forget you have for a believer who is under grace and not under law ... The ■wife does not have authority over her own body but the husband does. And, likewise, the husband doesn’t have authority over his own body, but the wife does.”
Dale Standifer, Executive Director of the Metropolitan Center for Women and Children, accepted as an expert in the field of domestic violence, rape, and sexual assault, testified that “acquaintance rape” where the parties know each other, or have had intimate relations in the past, is much more common than “stranger rape.” Standifer further testified that it is common for women to not want to leave their abusers based on a variety of different reasons. Particularly, Standifer testified that women who are not from the United States are unfamiliar with their legal rights and can be afraid of the police. Standifer also testified that there is typically a delay in reporting acquaintance rape because the victim is traumatized, scared, and may want to talk to a family member or pastor before reporting the crime. Standifer also explained that only a small percentage of victims that have experienced verbal and physical abuse, and sexual assault, actually present with any type of physical injuries.
InThe State rested and the defense called Norman Caesar. Caesar testified regarding his friendship with the defendant. Caesar further testified that he first met the defendant’s ex-wife, the victim, in 2004 and never noticed any marital prob *583 lems between them. After the divorce, between 2007 and 2009, Caesar testified that he recalled a loving relationship between the victim and defendant. Prior to the defendant’s arrest, Caesar testified that the victim told the defendant he was not allowed to see his children, however, Caesar was unsure of the reasoning.
Yvonne Matthews was also called as a character witness for the defense. She testified that she is the defendant’s cousin. Matthews testified that she did not know any details about the defendant’s marriage, but that she could tell there was “a little problem because ... he thought a lot about his kids.” Matthews also stated that at one point the defendant was prevented from seeing his children, however, as far as she knew, the defendant was a gentleman.
Lastly, the defendant himself testified and denied any violence or inappropriate behavior between himself and the victim during their marriage. The defendant testified that he filed for divorce in 2006 for religious reasons, noting that marriage is simply a contract and that after divorcing, he and the victim still intended on being together. Even after the divorce was final, the defendant testified that he and the victim had consensual sex many times. The defendant also testified to an incident in 2007 when he had an argument with the victim over an alleged affair during which the victim pulled a knife out and cut his pants when he was attempting to leave the house. Also, with respect to the December 29, 2008 incident, defendant testified that he had been sleeping over at the victim’s house since the 25th of December, and that when he stepped outside to use the phone on the 28th, the victim locked him out, so he slept in his car that night until the police arrived the next morning and arrested him. Even after his arrest in December, the ^defendant testified that the victim gave him a key to her house and that he slept over at the victim’s house “many times.”
With regard to the instant offense, the defendant testified that the victim was aware that he was going to come to her house to watch the children, but when he got there she advised him that she had already retained a babysitter. The defendant testified that the victim then invited him inside where they sat talking until he fell asleep. He denied throwing the victim onto the ground, forcing her onto the couch, threatening to kill her, striking her, ripping off her clothes, or engaging in any sexual activity with her on March 7, 2009.

ASSIGNMENTS OF ERROR AND DISCUSSION

The Louisiana Appellate Project has filed an appellate brief in this matter on behalf of defendant, and defendant filed a supplemental pro se brief. In his second pro se assignment of error, defendant argues that the evidence presented at trial was insufficient to support the verdicts rendered in this case. Pursuant to State v. Hearold, 603 So.2d 731, 734 (La.1992), this assignment of error will be addressed first because it challenges the sufficiency of the evidence
Specifically, defendant takes issue with the testimony of various witnesses and their alleged factual inconsistencies. First, defendant claims that Deputy Rull-man’s testimony calls into question whether the victim actually suffered a beating by the defendant. In particular, defendant seems to assert that the photographs admitted into evidence through Deputy Rull-man do not establish the injuries reported by the victim. Second, defendant argues that the credibility of Deputy Blanford was called into question at trial when he testified inconsistently with his report and probable cause affidavit regarding the resistance of defendant at the time of his *584 arrest. Third, defendant calls the credibility of the victim into question. Defendant argues that it is suspicious that the police officers were 113originally unable to locate the clothing the victim was wearing at the time of the alleged rape, but that with the aid of the victim, they were later recovered from the trashcan. Defendant also contends that the victim’s testimony regarding the time during which they were living together was inconsistent, and that the reason for the victim’s false testimony at trial regarding his abuse and infidelity was because the victim was angry about defendant spending too much time away from home.
Other than stating that the verdict rendered in this case was contrary to the law and evidence, defendant does not specifically address how the State failed to meet its burden of proving the elements of the charged offenses. Further, we find that his factual allegations are unsupported by the record.
The constitutional standard for testing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
In the instant case, the jury found defendant guilty of forcible rape. Forcible rape is defined in LSA-R.S. 14:42.1 in pertinent part:
A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1)When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime. LSA-R.S. 14:41.
1 ^Defendant was also convicted of aggravated burglary. LSA-R.S. 14:60 provides, in pertinent part:
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or moveable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or entering or leaving such place.
In order to meet the elements of the charged offenses, the victim’s testimony was crucial to the State’s case. At trial, the victim described her marriage to the defendant as “rocky,” and that she suffered verbal and physical abuse from the defendant. Beginning in 2004 until the date of the incident on March 7, 2009, the victim testified regarding her fear of the defendant and the constant physical and verbal abuse she suffered throughout the years. The victim testified that despite moving residences numerous times, obtaining a restraining order, and obtaining a divorce, the defendant continued to harass, stalk, and abuse her physically, emotional *585 ly and sexually. One day, a few days before the subject incident, the victim found the defendant in her apartment hiding behind a door wearing white gloves and carrying a machete. The victim testified that when she started to scream, he put his hand over her mouth, told her to “shut up,” and began hitting her as he held her down on the floor. Despite the defendant’s threats that he would kill her if she told anyone about the incident, she reported it to the police the next day.
The victim also testified in detail regarding another incident that occurred on March 7, 2009. Specifically, the victim testified that after arriving home from work, the defendant jumped out from behind her with a blunt object, pushed her into her home, held her down, placed his hands around her throat, pushed her up against the wall and threatened to kill her. The victim attempted to escape but to no 11savail. The defendant then pushed her onto the bed, tore off her pants, and engaged in forced sexual intercourse with her.
In addition to the victim’s testimony, photographs of the victim’s injuries and torn clothes were introduced at trial. Moreover, Deputy Rullman, the first officer to interview the victim after the incident, testified consistently with the victim’s account of the events. And despite defendant’s contention, the photographs admitted into evidence through Deputy Rullman are consistent with the injuries reported by the victim.
Additionally, various officers testified concerning prior incidents concerning the victim and defendant. Deputy Favaloro testified regarding the prior incident which occurred on December 29, 2008. On that day, Deputy Favaloro testified that he met with the victim at her apartment who appeared scared and who informed him that her ex-husband had been at the apartment all night banging on her doors and windows. After being shown the divorce papers, Deputy Favaloro testified that the defendant refused to leave the premises and violently resisted arrest. Also, Deputy Cephus testified regarding the March 1, 2009 incident, explaining that the victim had called in a complaint concerning her ex-husband who had been following her from her home and place of employment. The victim also advised him that the defendant had even entered her home one day without her knowledge, and was found standing in a corner behind a door wearing latex gloves.
Further, the 911 tapes concerning the December 29, 2008 and March 1, 2009 incidents were played for the jury. On the December 29, 2008 tape, the victim told the operator that she was scared to leave her house; and on the March 1, 2009 tape, the victim was heard telling the operator that the defendant beat her up and threatened to kill her if she told anyone about the incident. The victim further told the operator that the defendant was stalking her.
1 ifiThe verdicts in this case hinged on credibility determinations by the jury, which the defendant calls into question in this assignment. In contrast to the victim’s testimony about the offenses, defendant denied the occurrence of the December 29, 2008 incident, and also testified that even after divorcing, he and the victim still intended on being together. The defendant further testified that the victim gave him a key to her house and slept over at the victim’s house “many times.” With regard to the instant offense, defendant testified that the victim invited him inside her apartment where they sat talking until he fell asleep. He denied throwing the victim onto the ground, forcing her onto the couch, threatening to kill her, striking her, ripping off her clothes, or engaging in *586 any sexual activity with her on March 7, 2009. At trial, defendant also suggested that the victim fabricated these charges because of immigration concerns and was angry about defendant spending too much time away from home.
The jury heard the conflicting testimony presented at trial including defendant’s theory that the victim lied about the charges. In finding defendant guilty of forcible rape and aggravated burglary, the jury found that defendant forcefully entered the victim’s home, without her permission, and with the intent to injury and/or rape the victim against her will after unsuccessful attempts at escape and fear of death. The jury clearly rejected defendant’s testimony and gave credence to the evidence produced by the State.
Credibility determinations are within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251, 1254 (La.App. 2 Cir.1986), writ denied, 499 So.2d 83 (La.1987). Accordingly, the reviewing court’s role is not to assess Incredibility or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442, 443. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Robinson, 02-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79, cert. denied, 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004).
In the case of sexual offenses, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-0150 (La.6/30/00), 765 So.2d 1066. See: State v. Tapps, 02-0547 (La.App. 5 Cir. 10/29/02), 832 So.2d 995, 1001, writ denied, 02-2921 (La.4/21/03), 841 So.2d 789, where this Court held that the victim’s testimony alone, even absent any additional physical evidence, was sufficient to establish the elements of the offense of forcible rape.
After reviewing the evidence presented in the light most favorable to the prosecution, we find that the record supports the jury’s credibility determinations and that a rational trier of fact could have found defendant guilty beyond a reasonable doubt of forcible rape and aggravated burglary.[13] Thus, we find no merit in defendant’s augment that the evidence presented was insufficient to support the verdict.
|1RWe turn to the remaining assignments of error asserted by defendant in this appeal. In his counseled brief, defendant solely argues that the trial court erred in admitting other crimes evidence which was highly prejudicial and denied *587 him a fair trial. In particular, defendant assigns error to the trial court’s admission of six other acts which were so extensive that they overwhelmed the evidence presented concerning the crimes for which the defendant was convicted. The defendant further contends that the other crimes evidence did not prove knowledge, intent, motive, identity, or system. Rather, defendant maintains that the evidence was used to prove that the defendant was a man of bad character and acted in conformity therewith. Accordingly, the defendant contends that the admission of the other crimes evidence was not harmless, and warrants reversal and remand for a new trial.
In response, the State argues that the other crimes evidence in this case was independently relevant under LSA-C.E. art. 404(B) and properly introduced to prove that the defendant was the perpetrator of the crime. The State further cites to State v. Rose, 06-0402 (La.2/22/07), 949 So.2d 1286, in support of its position that the other crimes evidence was relevant to show the volatile nature of the relationship between defendant and victim and defendant’s motive for commission of the crime. In the alternative, the State submits that any error committed in the admission of the prior bad acts would constitute harmless error.

Notice/Prieur Hearing

On March 2, 2011, the State filed its Notice of Intent to Use Other Crimes Evidence. In its notice, the State explained that the defendant and victim were married in January of 2000 and divorced in 2007. The State expressed its intention of introducing evidence of the following prior incidents of stalking and domestic abuse involving defendant and the victim, his ex-wife, which occurred both during |19and after their marriage: 1) in 2004, the defendant beat the victim “all over her body,” when the victim confronted him about an affair he was having with another woman. The defendant told the victim that if she called the police he would “finish it.” He also told the victim “you’re nothing without me ... if I didn’t bring you here you’d be nothing,” and “you think you have a pretty face but I can end that quick ... the police cannot touch me;” 2) in 2005, after a verbal altercation regarding their daughter’s graduation, the defendant grabbed the victim by the neck and choked her; 3) in 2006, the defendant slapped the victim across the face after engaging in a verbal argument over his financial affairs and lack of employment; 4) in 2007, after their divorce, the defendant would harass the victim, beat her, force her to engage in sexual intercourse, and threaten her with bodily harm and death. The defendant also refused to accept their divorce and stated that “the piece of paper” does not matter because they are still married under the eyes of God; 5) again in 2007, the defendant followed the victim to their daughters’ school and beat her in the presence of their two children; 6) on December 28, 2008, the defendant banged on her doors and windows of the victim’s home throughout the night and demanded that he be allowed inside. When the victim called the police the following morning, the defendant refused to leave and became combative, requiring the use of pepper spray to detain him. The defendant was subsequently arrested on December 29, 2009 and was charged with criminal trespass and resisting an officer; and 7) on March 2, 2009, after being followed to and from work by the defendant, the victim arrived home to find the defendant in her bedroom wearing latex gloves and carrying a machete. The victim ran from the home and contacted the police, however, the defendant was not present when the police arrived. The State asserted in its notice that the purpose of using said acts |20was *588 to show defendant’s knowledge, intent, identity, absence of mistake, system, plan, preparation and motive.
On August 15, 2011, a Prieur[14] hearing was held. At the hearing, the State set forth the seven prior incidents of stalking and/or domestic abuse involving defendant and his ex-wife, arguing that the prior incidents show the defendant’s motive, intent, identity, absence of mistake, and knowledge. The State cited to the Louisiana Supreme Court case, State v. Rose, 06-0402 (La.2/22/07), 949 So.2d 1236, in support of its position that evidence of prior incidents of domestic violence are admissible to illustrate the volatile nature of the relationship between the victim and the defendant, and was not being used in the instant case for the purpose of showing the defendant is of bad character. The State noted that at trial it would present the testimony of police officers and the victim to show that the defendant never acknowledged, or accepted, the divorce between himself and the victim, rather, the defendant continued a pattern of harassment, stalking, and violence. The State further acknowledged that although the bulk of the prior bad acts was not reported to the police due to the victim’s fear, the State argued that they are admissible and relevant to show a clear pattern of abuse between the victim and defendant.
In response, the defense distinguished Rose, supra, noting that Rose was a murder case in which the pattern of domestic violence established the motive, whereas in the instant matter, the prior bad acts may have been intentionally created by the victim to help with her immigration status. The defense further maintained that the unsubstantiated domestic violence aceusa-tions were prejudicial, and if admitted, would deny defendant a fair trial.
12i After listening to the arguments of counsel, the trial court granted the State’s motion to introduce evidence of other crimes, finding the evidence was not more prejudicial than probative, and that the pattern of bad acts by defendant showed an absence of mistake.
The trial court’s ruling on the admissibility of evidence will not be reversed absent an abuse of discretion. State v. Noil, 01-521, p. 41 (La.App. 5 Cir. 12/26/01), 807 So.2d 295, 302, writ denied, 02-0276 (La.10/25/02), 827 So.2d 1177. As a result of the court’s ruling, testimony from the victim regarding other crimes evidence was presented at trial.[15] Defendant now challenges the admissibility of this evidence, arguing that the offenses do not fall within the purview of LSA-C.E. art. 404(B). Defendant concludes that the questionable strength of the State’s case made the inadmissible other crimes evidence more prejudicial and thus, the error admitting the evidence was not harmless.
Evidence pertaining to defendant’s commission of crimes, wrongs or acts, other than the one with which he is currently charged, is inadmissible when the only purpose of such evidence is to prove defendant’s character and, thus, his subsequent disposition to break the law. LSA-C.E. art. 404; State v. Harrison, 604 So.2d 583 (La.1992); State v. Humphrey, 412 So.2d 507 (La.1981); State v. Wright, 94-682 (La.App. 5 Cir. 1/18/95), 650 So.2d 291, writ denied, 96-0855 (La.9/20/96), 679 So.2d 430. The underlying rationale behind this rule is that the prejudicial tendency of such evidence outweighs its probative value, since the finder of fact is likely to convict because Defendant is a “bad per *589 son” regardless of the strength of evidence against him in the case being tried. State v. Brown, 318 So.2d 24 (La.1975); State v. Gay, 616 So.2d 1290 (La.App. 2 Cir.1993), writ denied, 624 So.2d 1223 (La.1993).
| ^However, such evidence may be admitted by certain statutory and jurisprudential exceptions to the exclusionary rule when it tends to prove a material issue and has independent relevance other than showing that the defendant is of bad character. State v. Dauzart, 02-1187 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 165. LSA-C.E. art. 404(B)(1) provides that:
[ejxcept as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. •
In order for other crimes evidence to be admitted under LSA-C.E. art. 404(B)(1), certain requirements must be met. State v. Page, 08-531, p. 13 (La.App. 5 Cir. 11/10/09), 28 So.3d 442, 451, writ denied, 09-2684 (La.6/4/10), 38 So.3d 299; State v. Jackson, 05-923, p. 10, (La.App. 5 Cir. 3/28/06), 926 So.2d 72, 78. First, pursuant to Prieur, the State must provide written notice to the defendant of the acts it intends to prove, along with the exception to the exclusionary rule upon which it relies. Page, 08-531 at 13, 28 So.3d at 451 (citing Jackson, 05-923 at 10, 926 So.2d at 78). Additionally, one of the factors enumerated in the article must be at issue, have some independent relevance, or be an element of the crime charged. Id.; see also State v. Schaller, 08-522, pp. 23-24 (La.App. 5 Cir. 5/26/09), 15 So.3d 1046, 1060, writ denied, 09-1406 (La.2/26/10), 28 So.3d 268. Finally, Prieur requires that the State show that the defendant committed the other crimes. Jackson, 05-923 at 11, 926 So.2d at 78. This Court has recognized that not every violation of Prieur notice requires reversal, and a defendant must show prejudice before he can | ^complain of such a violation. State v. Ridgley, 08-675, p. 14 (La.App. 5 Cir. 1/13/09), 7 So.3d 689, 698, writ denied, 09-0374 (La.11/6/09), 21 So.3d 301.
Finally, the probative value of the extraneous evidence must outweigh its prejudicial effect. Page, 08-531 at 13, 28 So.3d at 451 (citing LSA-C.E. art. 403; Jackson, 05-923 at 11, 926 So.2d at 78). The purpose behind Article 404(B) is not to prevent prejudice, since evidence of other crimes is always prejudicial, but to protect against unfair prejudice when the evidence is only marginally relevant to the determination of guilt of the charged crime. Schaller, 08-522 at 24,15 So.3d at 1060-61. The burden is on the defendant to show that he was prejudiced by the admission of the other crimes evidence. Schaller, OS-522 at 24, 15 So.3d at 1060; Jackson, OS-923 at 11, 926 So.2d at 78. Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence pursuant to LSA-C.E. art 404(B)(1) will not be disturbed. Schaller, 08-522 at 24,15 So.3d at 1061.
Courts have upheld the admissibility of similar other crimes evidence. In State v. Walker, 394 So.2d 1181 (La.1981), the victim saw defendant, her ex-husband, at a lounge while celebrating her recent engagement to another man. A short time *590 later, the vietim was awakened by a shotgun blast hitting her wall. At defendant’s trial for aggravated criminal damage to property, the State attempted to elicit testimony from the victim as to defendant’s motive by asking her whether she had any problems with defendant during her marriage and whether he ever lost his temper in her presence. The trial judge allowed this testimony, and the Louisiana Supreme Court agreed with this ruling. On appeal, the court observed, “Clearly, evidence that defendant and his ex-wife, the person to whom defendant’s alleged criminal conduct was directed, had had a poor marital relationship and that defendant had a bad temper was relevant as tending to show the commission of the offense and the intent.” Walker, 394 So.2d at 1184.
liJn the Walker case, defendant also challenged the trial court’s denial of his motion for mistrial based on the State’s reference to inadmissible other crimes evidence. In particular, the State asked the victim whether defendant beat her during their marriage. The court also found that the evidence of the beatings was admissible, noting that it was “substantially relevant for the purpose of showing defendant’s motive for committing the crime charged, that is, because of the troubled marriage of the parties and its subsequent dissolution, defendant harbored ill will towards Ms. Normand which, upon defendant seeing his ex-wife celebrating her engagement to another man, led to his commission of the crime charged.” The court further stated that the evidence tended to prove a material fact at issue, the nature of the prior relationship between the parties in regard to defendant’s motive for committing the crime. State v. Walker, 394 So.2d at 1184-1185.
In State v. Welch, 615 So.2d 300 (La.1993), the victim and others were watching a fireworks display when defendant, the victim’s ex-boyfriend, walked past them. A few minutes later, defendant returned, punched the victim in the face, then pulled out a knife, and cut her on the arm. During defendant’s trial for second degree battery, the trial court allowed the victim to testify regarding previous threats defendant had made to her and her fiancé.
In agreeing with the trial court and finding the prior threats admissible, the Louisiana Supreme Court explained: “... the state could not place the circumstances of the offense in their proper context without reference to the nature of the relationship existing between the victim and the defendant. Without that evidence, which included prior acts of violence or threatened violence by both parties (defendant claimed that the victim had previously attacked him with a knife), the jury would have lacked the context in which to evaluate the victim’s ^testimony about what otherwise appeared to be a gratuitous attack by the defendant.” Welch, 615 So.2d at 303. The court further found that the threats were a reflection of defendant’s subjective emotional state and could explain his sudden attack on his victim with a knife. It concluded that the primary purpose of the evidence was not to prove defendant’s bad character but to illustrate the volatile nature of his relationship with the victim and his inability to put her behind him.
In State v. Cotton, 07-782 (La.App. 5 Cir. 2/19/08), 980 So.2d 34, 44, writ denied, 08-0603 (La.10/3/08), 992 So.2d 1010, defendant was convicted of unauthorized entry of an inhabited dwelling, and on appeal he argued that the trial court erred by admitting evidence of other crimes because that evidence was much more prejudicial than probative. This Court concluded that the trial court did not abuse its discretion in admitting the other crimes evidence, stating as follows:
*591 ... We find that evidence of defendant’s hitting the victim while she was driving, following her into the store afterwards, then damaging her vehicle (October of 2002); going to her place of employment, pointing a gun at her, and telling her he was going to kill her (May 2003); and going to her apartment, then hitting her while she was outside of her apartment because she would not let him go inside (August 2003) was substantially relevant for the purpose of showing his motive for entering the victim’s apartment without her permission in September of 2003. The evidence shows that defendant harbored ill will towards the victim because of their troubled relationship and its subsequent dissolution, which led defendant to pursue the victim and either threaten or physically abuse her.
Additionally, as the Supreme Court found in Welch, this Court found that the State could not have placed the circumstances of the offense in their proper context without reference to the nature of the relationship existing between the victim and defendant. And without that evidence the jury would have lacked the context in which to evaluate the victim’s testimony about what otherwise would have appeared to be an isolated incident of defendant being in the victim’s apartment. This Court reasoned that the primary purpose of the evidence was not to Reprove defendant’s bad character, but to illustrate the volatile nature of his relationship with the victim. Cotton, 980 So.2d at 44.
Most recently, in State v. Adams, 11-980 (La.App. 5 Cir. 4/24/12), 89 So.3d 435, this Court found that the trial court did not err in allowing the admission of other crimes evidence pursuant to LSA-C.E. art. 404(B)(1). In Adams, the victim testified to five instances of domestic abuse, battery, and various threats. This Court determined that the other crimes evidence was substantially relevant for showing defendant’s motive for damaging the victim’s vehicle and for forcefully entering her apartment. Further, this Court noted that the State could not have placed the circumstances of the offenses in their proper context without reference to the nature of the relationship existing between the victim and the defendant. Without the other crimes evidence, this Court went on to reason that the jury would have lacked the context in which to evaluate the victim’s testimony about what otherwise would have appeared to be isolated incidents.
In the instant case, as in Walker, Welch, Cotton, and Adams, we find that the trial court did not err in allowing the admission of other crimes evidence pursuant to LSA-C.E. art. 404(B). At trial, defendant testified that he did not commit the charged offenses. Based on defendant’s testimony, we find that the other crimes evidence introduced at trial was substantially relevant to show defendant’s motive, i.e., reason to commit the charged offenses. The Louisiana Supreme Court has found that “[f]or evidence of motive to be independently relevant, it must be factually particular to the victim and the charged crime.” State v. Rose, 06-0402, p. 15 (La.2/22/07), 949 So.2d 1236, 1244. Here, the testimony at trial revealed that the defendant refused to accept the divorce from the victim. Defendant proclaimed to be a believer who is “under grace and not under law,” and that regardless of the | ^divorce, “[wjives submit to your own husbands as to the Lord ...” Moreover, defendant’s pattern of physical abuse of the victim illustrates a motive factually peculiar to the aggravated burglary and forcible rape committed against the victim. As in the aforementioned cases, defendant’s prior acts towards the victim placed the circumstances of the March 6, 2009 incident in its proper context, which would have been *592 severely hindered without reference to the nature of the relationship that existed between the victim and defendant. Without that evidence, the jury would have lacked the context in which to evaluate the victim and defendant’s testimony. In addition, we find that the primary purpose of the evidence was not to prove defendant’s bad character, but was independently relevant to illustrate the volatile nature of his relationship with the victim. Specifically, we find that the evidence demonstrated a pattern of defendant’s verbal, physical, and emotional abuse with respect to the victim, his ex-wife.
Considering that the record demonstrates that the other crimes are highly probative of the volatile relationship between the victim and defendant, and the similarity of the abusive pattern of conduct by the defendant toward the victim, we conclude that the probative value of the “other crimes” evidence outweighed its prejudicial effect. We also note that the trial judge gave the jury a limiting instruction regarding the “other crimes” evidence. The jury was instructed as follows:
Evidence that the defendant involved in the commission of an offense other than the offense for which he is on trial is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show the motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. Remember, the accused is on trial only for the offense charged. You may not find him guilty of this offense because he may have committed another offense.
| ^Defendant’s pro se brief assigns error to the State’s “motion of intent to use other crimes evidence.” Amid various allegations contained in his pro se brief, defendant argues that the allegations contained within the State’s notice were false and constituted inadmissible hearsay. The following facts appear to be among the false allegations defendant complains were improperly contained within the State’s notice: 1) defendant’s daughter neither attended nor graduated from elementary school; 2) defendant’s divorce from the victim was filed in 2006, not 2007; 3) Mr. Jordan never had a girlfriend; and 4) the State filed a false document concerning the March 2, 2009 incident, which was contradictory to Sheriff Cephus’ report and the 911 call.
First, defendant did not object to the alleged false statements, or their hearsay nature, at the Prieur hearing or at trial.[16] Pursuant to LSA-C.Cr.P. art. 841, a defendant must make known the grounds for his objection and is limited on appeal to those grounds articulated at trial. State v. Jackson, 450 So.2d 621 (La.1984); State v. Baker, 582 So.2d 1320 (La.App. 4 Cir.1991), writ denied, 590 So.2d 1197 (La.1992), cert. denied, 506 U.S. 818, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992). Accordingly, defendant has waived his right to argue this issue on appeal, pursuant to LSA-C.Cr.P. art. 841. State v. Styles, 96-897 (La.App. 5 Cir. 3/25/97), 692 So.2d 1222, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609.
Moreover, had defendant preserved this issue for appeal, we nevertheless find that the argument lacks merit. The factual inaccuracies cited by defendant were nei *593 ther proven at trial, nor are they contra-dieted in the record of this case. As previously stated herein, we find that the State presented sufficient proof, for |2flpurposes of the introduction of other crimes evidence, to prove that defendant committed the prior bad acts or offenses. Specifically, the victim testified as to the circumstances of each offense. In addition, the State presented the testimony of deputies who responded to some of the reported incidences, as well as two 911 tapes that were introduced at trial. The assignments of error are without merit.
Defendant next argues that his counsel was ineffective for failing to “raise issue on discovery,” pertaining to the “falsity of information” provided by the assistant district attorney during discovery. However, defendant does not specifically address the discovery violation allegedly committed in this case, or how his counsel’s failure to object to the alleged false information provided by the State constituted deficient performance which prejudiced his case. Under these circumstances, we find that defendant has failed to comply with the Uniform Rules, Courts of Appeal, Rule 2-12.4, which provides that “[a]ll specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment or error which has not been briefed.” Restating an assigned error in brief without argument or citation of authority does not constitute briefing. State v. Marie, 07-397 (La.App. 5 Cir. 11/27/07), 973 So.2d 780. We therefore conclude that defendant has abandoned this assignment, and further note that defendant’s claim would be more properly addressed through post-conviction proceedings.
Defendant next claims that the district attorney and all other officials involved in this case had their “own personal interest and motive in the outcome of this case. Defendant asserts that the trial judge and the prosecutor failed to follow “the laws of the land and the constitution,” and also failed to conduct a thorough investigation of the facts and issues of this ease. Defendant also argues that the l^court did not have lawful authority over the defendant and the victim who are of an independent nation, which governs all affairs in their personal lives.
Again, defendant failed to comply with the Uniform Rules, Courts of Appeal, Rule 2-12.4, which provides that “[t]he argument on a specification or assignment of error in a brief shall include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error. The court may disregard the argument on that error in the event suitable reference to the record is not made. All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment or error which has not been briefed.” Here, defendant’s allegations are unsupported in law and defendant does not provide fact-specific references in the record regarding the alleged actions complained of to support his misconduct claims. Accordingly, we consider defendant’s assignment as abandoned.

ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matters were discovered:
First, the record does not reflect that defendant was notified of Louisiana’s sex offender registration requirements in accordance with LSA-R.S. 15:540, et seq. Defendant’s forcible rape conviction is defined as a sex offense by LSA-R.S. 15:541(24)(a). LSA-R.S. 15:540, et seq., *594 which mandates registration and notification of sex offenders and LSA-R.S. 15:543(A), which requires the trial judge to provide written notification of the registration and notification requirements. This Court has held that the trial court’s failure to provide this notification constitutes an error patent and warrants a remand for written notification. See State v. Gaddis, 07-395, p. 6 (La.App. 5 Cir. 11/13/07), 973 So.2d 21, 28, writ denied, 08-0156 (La.10/10/08), 993 So.2d 1277; State v. Morgan, 06-529, p. 23 (LaApp. 5 Cir. 12/12/06), 948 So.2d 199, 213; State v. Stevenson, 00-1296, p. 4 (La.App. 5 Cir. 1/30/01), 778 So.2d 1165, 1166-67.
In addition, although the commitment indicates defendant was properly advised of the time period for filing post-conviction relief, the transcript reflects that defendant was advised that he had “two years after judgment and conviction become final to seek post-conviction relief.” (Emphasis ours). The transcript prevails when there is a discrepancy between the commitment and the transcript. State v. Lynch, 441 So.2d 732, 734 (La.1983). This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and, sentence become final is incomplete. State v. Grant, 04-341, p. 5 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598.
This Court has recently corrected this error by way of its opinion rather than remand. See State v. Neely, 08-15707, p. 9 (La.App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied, 09-0248 (La.10/30/09), 21 So.3d 272; State v. Davenport, 08-463, pp. 10-11 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451, writ denied, 09-0158 (La.10/16/09), 19 So.3d 473. Accordingly, we hereby advise defendant by way of this opinion that no application for post-conviction relief, including applications which seek an out-of time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of LSA-C.Cr.P. arts. 914 or 922. See Neely, supra; Davenport, supra.

DECREE

Accordingly, for the reasons assigned herein, the conviction and sentence of defendant Clevern Granger are hereby affirmed. The matter is remanded to the 132district court for notification to defendant of Louisiana’s sex offender registration requirements in accordance with LSA-R.S. 15:540, et seq.

AFFIRMED; CASE REMANDED WITH INSTRUCTIONS

. Pursuant to LSA-R.S. 46:1844(W), which requires the confidentiality of crime victims who are minors and victims of sex offenses, the victim in this case will not be identified by name.

. At one point, in 2006, the victim testified that she and her children moved in with a *579 family friend by the name of A.J. The defendant was not allowed to stay at the apartment, but the victim testified that he would come to the apartment to see the kids and would ask for money and want to have sex. The victim testified that she never willingly had sex with the defendant but that she just "laid there and let him do whatever he had to do,” because she "didn't want any problems ... [or] fights because [her] kids were right there. [And] Mr. Jordan was in the next room, so [she] just laid there.”

. The record contains a copy of the Judgment of Divorce rendered on March 13, 2007.

. The State introduced the victim’s lease into evidence at trial which corroborated the victim's testimony.

. Nancy Webber, custodian of records for the 911 Communications Division of the Jefferson Parish Sheriff’s Office, authenticated the 911 recordings made on December 29, 2008. The two December 29, 2008 recordings were played for the jury. The first call was made by the victim who indicated that she lived at 937 W. Monterey Ct., Apt. B, in Gretna. The victim advised the 911 operator that her ex-husband had been "banging on the door since last night,” and that she needed the police to come to her apartment because she had to leave but was scared to come out of her own apartment. The second call made to 911 was from the defendant who indicated to the 911 operator that there were three police officers at his apartment and that he needed the dispatcher to send a ranking officer to the scene. The defendant further advised the operator that the police were at his home because of a problem with his family.

. Dr. Eduardo Herrera, qualified as an expert in the field of obstetrics and gynecology, testified that approximately 10 to 50 percent of rape victims will present with injuries. How *581 ever, Dr. Herrera further testified that he would not be surprised if no physical trauma was present with regard to an incident of sexual abuse by a spouse. Dr. Herrera also testified that just because there may be a lack of DNA or trauma to the genitalia, does not mean that a sexual battery did not occur.

.On cross-examination, Deputy Rullman testified that the victim also indicated that during the incident her clothes were torn off her body, which were a black top and blue capri pants.

. On cross-examination, Deputy Rullman testified that the victim indicated to him that the incident began around 7:23 p.m. and ended the next morning at 5:00 a.m.

. Deputy Rullman also identified several photographs depicting scratch marks on the victim’s chest, bruising and a scratch to her lower jaw area, and bruising to her neck and back.

. The victim testified that she was wearing the blue pants and black top on the night of the incident, and that she did not place the clothing in the trash.

. Deputy Cephus testified that on March 8, 2009, he went back to the victim's residence to assist Deputy Singleton in locating clothing that had been placed in the trash after the incident. However, when Deputy Cephus arrived, the clothing and a pair of shoes had already been recovered. According to Deputy Cephus, the pair of pants that were seized were "cut open.”

.David Chaplain, Crime Scene Technician for the Jefferson Parish Sheriff's Office, authenticated the photographs taken of the residence and the evidence collected at the scene.

. See State v. Singleton, 05-622, pp. 5-7 (La.App. 5 Cir. 1/31/06), 922 So.2d 647, 650-51. In Singleton the defendant challenged his conviction for aggravated rape on the basis that the only evidence was the victim’s unbelievable testimony. This Court admitted there were some inconsistencies regarding when the victim told her mother about the incident, but concluded that the victim consistently described the details of the incident through her statements, interviews, and her testimony. This Court concluded the trier of fact made a credibility determination, which is not to be reassessed on appeal, and that the evidence proved the essential elements of aggravated rape beyond a reasonable doubt. Singleton, 05-622 at 7, 922 So.2d at 651.

. State v. Prieur, 277 So.2d 126, 128 (La.1973).

. It is noted that the victim did not testify to all of the acts set forth in the Prieur motion.

. The only objection raised by defense counsel at trial was concerning the relevancy of the December 29, 2008 incident involving the defendant and victim. Specifically, during the direct examination of Officer Favaloro regarding his investigation of the December 29, 2008 incident, defense counsel objected, stating "Judge, just for a matter of Record for my client, I’m objecting to the fact of the relevance to aggravated burglary and forcible rape that occurred on March 6th, 2009. That's the objection.”